STATE OF NORTH CAROLINA v. FRANKLIN MONROE SUITS

No. 39

(Filed 5 February 1979)

1. **Criminal Law § 83— wife's actions—testimony against husband—evidence improperly admitted**

    In a first degree rape case where the victim's assailant allegedly used a knife, the trial court committed prejudicial error in allowing a police officer to testify that he went to defendant's residence and asked defendant's wife if defendant had a knife, and that the wife left the room and came back with a small pocket knife which she gave the officer, since the wife was not competent or compellable to give evidence against defendant, and evidence of her actions should have been excluded as a declaration within the meaning of that rule. G.S. 8-57.

2. **Criminal Law § 86.5— prior convictions without counsel—questions about prior acts of misconduct proper**

    The trial court did not err in denying defendant's motion to limit cross-examination of him concerning his criminal record, and the court properly ruled that "it would not allow questions concerning previous convictions wherein the defendant did not have counsel or did not waive counsel but would allow the district attorney to make inquiry even in those cases wherein the defendant did not have counsel and had not waived counsel, on the basis of prior acts of misconduct," since a defendant in a criminal action who testifies on his own behalf may be impeached by being asked about prior acts of misconduct.

Justices BRITT and BROCK took no part in the consideration or decision of this case.

Chief Justice SHARP concurs in the result.

APPEAL by defendant from *Wood, J.* at the 2 January 1978 Criminal Session of GUILFORD County Superior Court.

The defendant was charged in four separate indictments, proper in form, with the following: two kidnapping offenses, one offense of first degree rape and one offense of crime against nature. The defendant entered pleas of not guilty to all the charges, and the cases were consolidated for trial.

The evidence for the State tended to show the following:

At approximately 1:30 a.m. on 16 August 1977, Marcia Hasty and Cheryl Elaine Small, sisters, were seated in their car that was parked under a street light near the bus station in Greensboro, North Carolina. They were there to pick up some of

Mrs. Small's luggage that was arriving by bus from Goldsboro. Mrs. Small was in the driver's seat and Marcia Hasty was asleep in the passenger side of the front seat.

A man came from behind the car, opened the door on the driver's side, and told Mrs. Small to "move over." He put a sharp object, later observed to be a knife, at her side. Both Ms. Hasty and Mrs. Small identified that man as the defendant.

The defendant started driving the car away from the bus station and instructed the two women to take off their clothes. He stated that he was "only going to rape them." When the car was stopped at a stop sign, Marcia Hasty jumped out. She ran across the street to an apartment house, and the police were called.

As the defendant was driving the car, he ordered Mrs. Small to perform acts of oral sex on him. He drove to a deserted shack, and the defendant made Mrs. Small get out of the car and remove her clothes. She testified she complied because he had the knife. The defendant performed oral sex on Mrs. Small and then raped her.

Afterwards, the defendant used his handkerchief to wipe off the car. He drove Mrs. Small back to the bus station and required her to lie down on the seat. When he got out, the defendant took the car keys and dropped them on the ground. Shortly thereafter, Mrs. Small got out of the car and started looking for the keys. She observed an old black truck, with "Dodge" written across the back of it, slow down as it drove past the street on which the bus station was located. Although she could not tell whether the driver was a male or a female, she noticed the driver was tall and had shoulder-length hair.

In the early morning hours of 17 August 1977, two Greensboro police officers observed an old black Dodge truck fitting Mrs. Small's description travelling south on Summit Avenue in Greensboro. They stopped the vehicle and determined that Franklin Monroe Suits, the defendant, was the owner and driver of the truck. After the police officers told the defendant they were investigating a rape that had occurred the night before, the defendant stated that he had an alibi. He claimed that he had been at Louie's Body Shop at the time of the crime.

At his request, the police officers followed the defendant to Louie's Body Shop. The defendant went into the building first. The officers followed, and they talked with Mr. Louie Flores, the manager. Then they went outside to look for some papers in their car. When they returned to the building, the defendant had disappeared. The next day the defendant was arrested at the home of his step-daughter.

A policeman testified that he saw a black pickup truck, similar to the one belonging to the defendant, in a parking lot next to the Greensboro bus station at about 1:30 a.m. on 16 August 1977. He observed a man get out of the truck and walk toward the bus station. When the officer went back to the station at 3:30 a.m. to investigate the crime in question, the truck was gone.

The evidence for the defendant tended to show the following:

The defendant testified that on 15 August 1977 he worked at the Cone Mobile Service Center from 3:00 p.m. until 11:00 p.m. He closed the station and left at about midnight. The defendant bought two bottles of wine at a convenience store and then changed clothes at home. Thereafter he went to Louie's Body Shop where he and Mr. Flores talked and drank some wine. The phone rang, the defendant answered it and then handed it to Mr. Flores. The defendant left sometime after 1:00 a.m. on 16 August 1977. Mr. Flores took the stand and corroborated this story. The defendant testified that he went directly home and to bed. The telephone rang and the defendant answered it. No one spoke, so he hung up. Cathy Haley, the defendant's step-daughter, stated that she called the defendant at his home between 1:30 and 1:45 a.m. on 16 August 1977. Her mother had asked her to call to see whether the defendant was home, and when the defendant answered, she hung up.

When the defendant and the police officers were at Louie's Body Shop on the afternoon of 17 August 1977, the defendant left because he felt that he was going to be put in jail for something he did not do, and he wanted to talk with his wife first. The defendant claimed he had not been to the Greensboro bus station for over two years. He denied ever having seen either Marcia Hasty or Cheryl Elaine Small before they testified against him in this matter.

After denying defendant's motions as of nonsuit, the trial judge submitted the four cases to the jury. The jury found the defendant guilty of the two charges of kidnapping, guilty of first-degree rape and not guilty of attempted crime against nature (the trial judge reduced the original offense to attempted crime against nature). The judge imposed a life sentence for the rape conviction and thirty-five years imprisonment for each of the kidnapping convictions, to run concurrently with the life sentence. The defendant appealed to this Court on the first-degree rape case, and we allowed his motion for review prior to a determination by the Court of Appeals of the two kidnapping convictions.

Other facts relevant to the decision will be related in the opinion below.

*Assistant Public Defender Anne B. Lupton for the defendant.*

*Attorney General Rufus L. Edmisten by Associate Attorney Leigh Emerson Koman for the State.*

COPELAND, Justice.

[1]  In his first assignment of error, the defendant claims the State violated G.S. 8-57. We agree; therefore, the defendant must be granted a new trial.

Over defendant's repeated objections, the State introduced State's Exhibit Number 3, a knife taken from the defendant's residence, into evidence at trial. The admission of the knife was based on the following testimony by an officer of the Greensboro Police Department:

"Q. Detective Travis, subsequent to the arrest of the defendant in this case, Franklin Monroe Suits, did you have occasion to go to his residence?

A. Yes, sir, I did.

Q. When did you go?

A. I went to 2804 Emerson Road, which is the residence of Mr. Suits, on the eighth month, 19th day, 1977, sometime in the afternoon.

Q. And when you went to the residence, who, if anyone, did you see?

A. Mrs. Suits, Frankie Suits' wife, came to the door and—

Q. Tell the Judge and the members of the jury what happened?

A. Mrs. Suits and myself had some conversation. I asked her if Frankie had a knife.

Q. What did Mrs. Suits do?

A. We were in the front room. She went out of the front room to another part of the house, was gone just a short time and came back and a small pocket knife was given to me.

Q. Detective Travis, I hand you what has been previously marked State's Exhibit No. 3. Can you identify that, sir?

A. This is the pocket knife that was given to me at 2804 Emerson Road on the 19th by Mrs. Suits."

At common law, a husband or a wife was incompetent to testify either for or against his or her defendant-spouse in a criminal action. North Carolina Gen. Stat. 8-57 changed this rule to the effect that a husband or a wife can testify *for* a defendant-spouse. *State v. Alford,* 274 N.C. 125, 161 S.E. 2d 575 (1968). The common law rule remains in effect, however, regarding testimony *against* a spouse in a criminal action. Subject to certain exceptions not relevant to this case, "[n]othing herein shall render any spouse competent or compellable to give evidence against the other spouse in any criminal action or proceeding." G.S. 8-57.

In discussing the rule, this Court has said that "[t]he prohibition extends to declarations made by one spouse not in the presence of the other. It is the duty of the presiding judge to exclude such evidence." *State v. Dillahunt,* 244 N.C. 524, 525, 94 S.E. 2d 479, 480 (1956) (per curiam). It is unquestioned that this defendant was not present and he did not consent to his wife giving the policeman the knife.

The State and the trial judge in this case made an effort to exclude any *oral* statement made by defendant's wife; however, that is not the only type of evidence that must be excluded as a "declaration" of a spouse. "[A]n act, such as a gesture, can be a declaration within the meaning of this rule." *State v. Fulcher,* 294 N.C. 503, 517, 243 S.E. 2d 338, 348 (1978).

In response to the officer's inquiry as to whether the defendant had a knife, the jury was informed that the defendant's wife left the room and returned with a pocket knife, identified as State's Exhibit Number 3. This conduct was equivalent to the wife stating, "Yes, the defendant has a knife, and here it is." "[I]t must be observed that the line of cleavage between conduct and statements is one that must be drawn in the light of substance, rather than form." McCORMICK ON EVIDENCE § 250 (2d ed. 1972). Thus, the court committed prejudicial error in allowing the police officer to testify to the wife's actions in this case. The defendant must be granted a new trial.

[2]  At the close of the State's evidence, the defendant made a written motion *in limine,* requesting the court to restrict the State's cross-examination of the defendant in this manner:

> "1. Not to mention, refer to, interrogate concerning or attempt to convey to the jury in any way, directly or indirectly, the fact that the defendant was sentenced in cases in which he was not represented by counsel nor waived counsel, or in cases in which he plead (sic) nolo contendere.

> 2. Not to question the defendant regarding his criminal record or specific acts of alleged misconduct, further than to ask him what he has been tried and convicted of, without first obtaining specific permission from the court to ask further questions outside the presence and hearing of the jury."

After a hearing on the motion, the trial court denied defendant's motion, indicating that "it would not allow questions concerning previous convictions wherein the defendant did not have counsel or did not waive counsel but would allow the district attorney to make inquiry even in those cases wherein the defendant did not have counsel and had not waived counsel, on the basis of prior acts of misconduct." We feel the judge ruled correctly in this matter.

The undisputed rule in North Carolina is that when a defendant in a criminal action testifies on his own behalf, he may be impeached by being asked about prior acts of misconduct. *See, e.g., State v. Black,* 283 N.C. 344, 196 S.E. 2d 225 (1973). After carefully reviewing the record on this point, we note that in no instance did the State couch its questions regarding prior bad acts in

terms of arrests, indictments, convictions or sentences. *See State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971). This argument is without merit.

The defendant brings forth numerous assignments of error to this Court relating to the kidnapping convictions. These contentions have been answered in *State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709 (1978), a recent opinion by this Court. We assume defendant's new trial will be conducted in accordance with that decision. We do not address the defendant's other assignments of error because they are not likely to recur in the new trial.

For the reasons stated above, the defendant is granted a

New trial.

Justice BRITT and Justice BROCK took no part in the consideration or decision of this case.

Chief Justice SHARP concurs in the result.