Opinion
 

 STEPHENS, J.
 

 This is an appeal from a judgment of conviction of violation of section 148.1, subdivision (a), of the Penal Code, making a false bomb report.
 
 [1]
 
 The appeal is based upon appellant’s contentions that the court erred in failing to recognize the marital communication privilege and that there is not substantial evidence to support his conviction.
 

 On July 4, 1977, a call was received by a supervisor at the Pacific Telephone Company, Joanne Swallon. The caller said that he was calling the F.B.I., and Ms. Swallon asked the caller to hold the line while she connected him with the F.B.I. He said, “No, I am going to tell you because you will be involved.” The man then said that he was going to bomb the F.B.I. and get two officers whose names were Winkler and Ross, along with it. Ms. Swallon asked the caller to hold the line while she got a pencil. She then asked the operator to hold the line open while she called Special Agent Bob Lees to report the bomb threat. The report was then routed to the Los Angeles Police Department, where it was referred to Police Investigator Noland Gilmore. Gilmore called the F.B.I. back to confirm the report and was told that another bomb threat had been received from the same phone number two days before. Gilmore then proceeded to the address from which the phone number originated, 1167
 
 Vi
 
 Browning. When he arrived at the residence, he noted that the door was open, but the screen door was closed. He knocked twice, but received no answer. He was just about to knock again when appellant ran down the stairs to the front door screaming, “You can’t come in. Get out of here.” Appellant closed the door with his right hand, while he brandished what appeared to the officer to be a sawed-off shotgun in his left hand. Officer Gilmore then called for assistance from a neighbor’s phone. When he left the neighbor’s house he observed appellant driving
 
 *414
 
 westbound on Browning. Officer Gilmore ran in front of appellant’s car with his revolver drawn and demanded appellant halt. Appellant, however, put his car in reverse and backed down the street for half a block and then proceeded south on Budlong. Officer Gilmore put out a broadcast describing appellant, who was apprehended a short time later and transported to the police station.
 

 While appellant was being transported to the police station, two police officers searched appellant’s apartment looking for possible crime victims and bombs. A telephone repairman, Robert Richardson, accompanied the officers in order to reconnect two of the three phones at the residence that had been pulled from the wall. At that time he was able to determine that the line was held up by a “calling party hold” having been placed on the line. This was the procedure used by Ms. Swallon when she received the bomb threat. During the search of the residence a sawed-off shotgun was found.
 

 At trial, Wanda Paulette James testified on the behalf of the prosecution. Ms. James had lived with appellant at various addresses for approximately four years and at the Browning Street address from February 1977 to July 3, 1977. Their three-year-old daughter lived with them. She testified that appellant had made statements to her on previous occasions regarding bomb threats and that he had made bomb threats on two occasions in her presence several months before she moved from the Browning Street residence on July 3, 1977.
 

 Testifying in his own defense, appellant denied having called the F.B.I. or the telephone company to make bomb threats. When asked if he ever intended to plant a bomb, appellant replied, “Not exactly. I had someone call me and threaten me.” He said that he had made a complaint to the telephone company because when he picked up his phone he heard “somebody preaching on the line” and talking about God. He denied pulling the phones from the wall. He explained the presence of the shotgun by saying that it was just for “show” and that it belonged to his three-year-old daughter. It could not fire, he said, because there was no hammer. He said that when Officer Gilmore had knocked at his door he had not known who it was. He claimed that he had a bed rail in his hand when he went to the door because he had not spent the previous night at the residence and when he came home that morning he had found two of the phones pulled from the wall.
 

 
 *415
 
 The first question appellant asks us to answer in his favor is, “Did the court err in failing to apply the marital communication privilege and the privilege of the spouse not to testify?” However, despite appellant’s rather ingenuous argument in support of his position that the trial court did err in permitting Ms. James to testify, we must answer his question in the negative.
 

 The common law marital communication privilege as codified in section 980 of the Evidence Code and the additional statutory privilege of a spouse not to testify (Evid. Code, § 970) each envision a single prerequisite—a valid marriage.
 
 [2]
 
 Appellant seeks, however, to have the requirement expanded to include relationships like that of appellant and Ms. James, a couple living together with “all the ‘trappings’ of a marriage, except the formality of a ceremony.” Appellant cites
 
 Marvin
 
 v.
 
 Marvin
 
 (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106] for the proposition that since cohabitation has been held to be sufficient for recognition of the community property rights of the parties upon termination of the relationship, similar public policy interests support the extension of the marital privileges under the Evidence Code to cohabitants who have established a marriage-like relationship. We do not agree. To extend
 
 Marvin
 
 into arenas totally removed from the property rights setting in which the case was decided would be ill-advised. Particularly in a case involving marital communication privileges, since privileges in general are looked upon with disfavor. As Professor McCormick points out: “. . . the attitude of commentators, whether from the bench, the bar, or the schools, has tended to view privileges from the standpoint of the hindrance to litigation resulting from their recognition. In this regard, the granting of a claim of privilege can serve only to ‘shut out the light’ so far as the party seeking to bring the privileged matter into the lawsuit is concerned.” McCormick on Evidence (2d ed. 1972) section 77, page 156.
 
 *416
 
 Likewise, in denying the claim of a customer of a brokerage firm to the disclosure of his broker’s records, Judge Learned Hand said: “The suppression of truth is a grievous necessity at best, more especially when as here the inquiry concerns the public interest; it can be justified at all only when the opposed private interest is supreme.”
 
 (McMann
 
 v.
 
 Securities and Exchange Commission
 
 (2d Cir. 1937) 87 F.2d 377, 378.)
 

 While we recognize the importance of a meretricious relationship to the individuals involved, we do not attach to the
 
 Marvin
 
 case the relevance or significance that appellant sees in it. The court in
 
 Marvin
 
 was very careful to disavow any resurrection of the doctrine of common law marriage in California, but rather held simply that the meretricious partner “has the same rights to enforce contracts and to assert her equitable interest in property acquired through her effort as does any other unmarried person.”
 
 (Marvin
 
 v.
 
 Marvin, supra,
 
 18 Cal.3d at p. 684, fn. 24.) The decision provides a method for equitable resolution of property disputes in situations where the parties not only carried on a relationship that, except for the formal ceremony, was marriage-like, but where they also entered into an implied contract or agreement as to the ownership of property, thus protecting the reasonable expectations of the parties. This in no way signals a general elevation of meretricious relationships themselves to the level of marriages for any and all purposes. It is for the Legislature to determine whether such relationships, because of their commonness in today’s society or for other policy reasons, deserve the statutory protection afforded the sanctity of the marriage union.
 
 [3]
 

 Since we have held that appellant and Ms. James would have had to have been married in order for her testimony to have been privileged, we will only briefly point out a couple of other problems with appellant’s arguments regarding the admissibility of her testimony. Appellant incorrectly asserts that, assuming arguendo that section 980 applies to meretricious relationships, any telephone bomb threats he may have made would be confidential communications within the meaning of that section. He is incorrect in that “acts of the spouses committed in
 
 *417
 
 each other’s presence do not constitute
 
 communications
 
 between them, within the meaning of the privilege for confidential marital communications.” (Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1972) § 36.3, p. 638., citing
 
 People
 
 v.
 
 Bradford
 
 (1969) 70 Cal.2d 333, 342 [74 Cal.Rptr. 726, 450 P.2d 46] and
 
 Tanzola
 
 v.
 
 De Rita
 
 (1955) 45 Cal.2d 1, 8 [285 P.2d 897].) Clearly, appellant’s conversations over a telephone to a third party were acts and not communications to Ms. James. Further, appellant concedes on the one hand that he cannot raise a claim of privilege under section 970, as that section grants a privilege only to the spouse of a party to a lawsuit not to testify, but claims error on the other hand by virtue of the fact that Ms. James was not given a chance to assert the privilege. Obviously, in light of our holding above regarding the inapplicability of
 
 Marvin
 
 to this case, the trial judge was correct in ruling that the privilege could not be asserted by Ms. James. Not only had the parties never been married, but Ms. James had moved out of the Browning Street apartment prior to the offense charged and had remained separated from appellant up to and during trial. The judge correctly ruled that the privilege did not apply.
 
 [4]
 

 Finally, appellant argues that there was insufficient evidence upon which to sustain the judgment of conviction. This contention is clearly without merit. (3) “The test on appeal [is] whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. [Citation.]”
 
 (People
 
 v.
 
 Mosher
 
 (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) The court in
 
 Mosher
 
 also pointed out that “(i)f the circumstances reasonably justify the trial court’s findings, an appellate court cannot reverse merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.]”
 
 (People
 
 v.
 
 Mosher, supra.)
 
 In this case, appellant contends that his testimony that he had not spent the night at the Browning Street apartment and that when he returned in the morning the phones were pulled out from the walls renders the fact that the hold that was placed on the line over which the bomb threat was placed was found to be on his phone line as insufficient proof that appellant made the call. However, the testimony of Ms. James regarding
 
 *418
 
 prior bomb threats and appellant’s actions when confronted by a police officer, together with the fact that the hold placed by the operator was on appellant’s line was sufficient evidence from which the trial court could have determined that appellant committed the crime charged.
 

 The judgment is affirmed.
 

 Kaus, P. J., and Hastings, J., concurred.
 

 [1]
 

 Appellant was also charged in count II with a violation of section 12020 of the Penal Code, possession of a sawed-off shotgun. However, his motion for a new trial was granted as to this count, and it was subsequently dismissed.
 

 [2]
 

 See Witkin, California Evidence (2d ed. 1966) sections 828 and 829 at pages 774-775 and (1977 supp.) sections 828 and 829 at page 371, and cases cited therein. Also, in
 
 People
 
 v.
 
 Richardson
 
 (1960) 182 Cal.App.2d 620, 623-624 [6 Cal.Rptr. 61], the defendant asserted error “in permitting a woman with whom he had been living, but who was not his wife, to testify against him. But the husband-wife privilege extends only to a valid marriage.
 
 {People
 
 v.
 
 Keller
 
 (1958) 165 Cal.App.2d 419, 423 [332 P.2d 174];
 
 People
 
 v.
 
 Glab
 
 (1936) 13 Cal.App.2d 528, 535 [57 P.2d 588].)” Section 970 states: “Except as otherwise provided by statute, a married person has a privilege not to testify against his spouse in any proceeding.” Section 980 states in pertinent part: “. . . a spouse . . . whether or not a party, has a privilege during the marital relationship and afterwards to refuse to disclose, and to prevent another from disclosing, a communication if he claims the privilege and the communication was made in confidence between him and the other spouse while they were husband and wife.”
 

 [3]
 

 In the comment of the Law Revision Commission to section 970, the commission said, “The rationale of the privilege provided by Section 970 not to testify against one’s spouse is that such testimony would seriously disturb or disrupt the marital relationship. Society stands to lose more from such disruption than it stands to gain from the testimony which would be available if the privilege did not exist. The privilege is based in part on a previous recommendation and study of the California Law Revision Commission.” Surely, any extension of this privilege to meretricious relationships should be likewise premised upon legislative research and study.
 

 [4]
 

 This fact situation aptly points up a very real problem in the extension of the marital privilege to meretricious partners were we to have accepted appellant’s argument as to the applicability of
 
 Marvin.
 
 If the couple is only living together, how would it be determined whether action like that taken by Ms. James, moving out, is sufficient to constitute a dissolution of the relationship for the purposes of the nonapplicability of section 970. Likewise, how long would a couple have to cohabitate before the relationship could be considered to have ripened into a relationship worthy of even the title of meretricious for the purposes of the application of sections 970 and 980.