STATE OF NORTH CAROLINA v. JOHNNY LEE FREEMAN

No. 99

(Filed 7 April 1981)

**1. Criminal Law § 83— competency of spouse to testify against other spouse — power of Supreme Court to change common law rule**

G.S. 8-57 does not codify the common law rule prohibiting one spouse from testifying against the other in a criminal action but merely provides that, aside from the exceptions listed therein, the common law rule remains unchanged and in full effect, and the Supreme Court possesses the authority to alter such judicially created common law rule.

**2. Criminal Law § 83— competency of spouse to testify against other spouse — modification of common law rule**

The common law rule prohibiting one spouse from testifying against another in a criminal action is modified so as to prohibit such testimony only if the substance of the testimony concerns a "confidential communication" between the marriage partners made during the duration of their marriage.

**3. Criminal Law § 83— competency of spouse to testify against other spouse — meaning of "confidential communication"**

In determining whether a spouse's testimony includes a "confidential communication," the question is whether the communication, whatever it contains, was induced by the marital relationship and prompted by the affection, confidence, and loyalty engendered by such relationship.

**4. Criminal Law § 83.1— competency of wife's testimony against husband**

A wife's testimony that her husband shot and killed her brother in her presence in a public place was competent in a prosecution of the husband for first degree murder of her brother, since the actions of the husband in a public place and in the presence of a third person could not have been a communication made in the confidence of the marital relationship or one which was induced by affection and loyalty in the marriage.

Justice MEYER did not participate in the consideration or decision of this case.

THE State appeals pursuant to G.S. 15A-979(c) from an order entered by *Thornburg, J.*, at the 5 September 1980 Schedule "C" Criminal Session of Superior Court, MECKLENBURG County. This case was argued as No. 128, Fall Term, 1980.

State v. Freeman

Defendant was charged in an indictment, proper in form, with first degree murder. The trial court granted defendant's motion *in limine* to suppress the testimony of his wife, on the ground that under the common law of North Carolina, codified at G.S. 8-57, defendant's wife is incompetent to testify against him in a criminal proceeding. Solely for the purpose of the court's determination on defendant's motion to suppress his wife's testimony, the parties stipulated to the following facts:

"1. That the defendant herein, Johnny Lee Freeman, and Rosemary Caldwell Freeman were, as of 6 June 1980, lawfully married, and had been so married for at least three years, their marriage having taken place in York, South Carolina.

2. That Rosemary Freeman had separated from the defendant shortly after their marriage and had not resumed cohabitation with him.

3. That Rosemary Freeman had lived in her mother's home since her separation from the defendant.

4. That on the evening of 6 June 1980, Rosemary Freeman was employed as a worker in the kitchen of the 'Rebel Room', a restaurant located on Freedom Drive in the City of Charlotte. At or about 8:00 p.m. on that date, the restaurant closed for the evening, and Rosemary telephoned her brother, Steve Caldwell, to come and take her home from work.

5. That after placing said telephone call, Rosemary went to a grocery store near the restaurant to await her brother's arrival. Several minutes later, she saw her brother drive up to the front door of the grocery store and stop his car. He was followed by the defendant in another car.

6. That the defendant pulled his car to a point roughly adjacent to Steve Caldwell's car as Rosemary came out of the front door of the grocery store.

7. That as Rosemary opened the passenger side door of her brother's car, defendant approached the car carrying a shotgun. As he came within a few feet of Steve Cald-

well's car, the defendant said: 'Do ya'll want to talk to me?' This statement was followed almost immediately by a blast from defendant's shotgun.

8. That the shotgun blast passed by Rosemary and went through Steve Caldwell's car, striking him in the neck and killing him as he sat behind the steering wheel.

9. That Rosemary immediately grabbed defendant's shotgun and attempted to wrest it away from him. A struggle between Rosemary and defendant ensued during which the shotgun was discharged into the air several times, and Rosemary was finally thrown to the pavement.

10. That upon being thrown to the pavement, Rosemary let go of the shotgun, whereupon defendant walked back to the car he was driving, placed the gun inside, and drove away.

11. That Rosemary Freeman, if called and sworn as a State's witness, would testify to all of the above facts.

12. That Rosemary Freeman has expressed her desire to testify against defendant in any subsequent trial of this case.

13. That a sawed-off shotgun was found under the feet of Steve Caldwell, the victim.

14. That as of the present time, the State has been unable to secure any potential witness who can testify to all of the above facts surrounding the shooting in this case except Rosemary Freeman, defendant's wife."

*Attorney General Rufus L. Edmisten by Assistant Attorney General Marvin Schiller for the State.*

*Public Defender Fritz Y. Mercer, Jr. by Assistant Public Defender Cherie Cox for defendant-appellee.*

COPELAND, Justice.

The sole issue presented by this appeal is whether this Court should continue to adhere to the common law rule rendering spouses incompetent to testify against each other in a criminal proceeding. We believe that the common law rule no longer com-

plies with the purposes for which it was created, therefore, we alter the rule in the manner set forth below to more closely achieve its purpose without unduly hindering the administration of criminal justice.

**[1]** Defendant contends that because the common law rule preventing spouses from testifying against each other in a criminal action is codified at G.S. 8-57, this Court is without power to judicially modify the rule. G.S. 8-57 provides in pertinent part that "[n]othing herein shall render any spouse competent or compellable to give evidence against the other spouse in any criminal action or proceeding," with such exceptions as are thereinafter set forth. This Court has previously held that this provision of G.S. 8-57, and similar provisions of the previous versions of this statute, are not affirmative statements by the legislature that spouses are not competent as witnesses against each other in a criminal proceeding. G.S. 8-57 and its predecessors merely state that, aside from the exceptions listed therein, the common law rule pertaining to the competency of spouses to testify against each other remains unchanged and in full effect. *State v. Alford*, 274 N.C. 125, 161 S.E. 2d 575 (1968); *Rice v. Keith*, 63 N.C. 319 (1869). *See also State v. Suits*, 296 N.C. 553, 251 S.E. 2d 607 (1979). Absent a legislative declaration, this Court possesses the authority to alter judicially created common law when it deems it necessary in light of experience and reason. *State v. Alford, supra; State v. Wiseman*, 130 N.C. 726, 41 S.E. 884 (1902). *See also Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L. Ed. 2d 186 (1980); *Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L. Ed. 2d 125 (1958). Consequently, we hold that this Court is empowered to change the common law rule at issue in this case, and defendant's allegations to the contrary are without merit.

At common law, the spouse of a defendant was incompetent to testify either for or against the defendant in a criminal proceeding. *Trammel v. United States, supra; State v. Suits, supra; State v. Alford, supra;* 1 Stansbury's North Carolina Evidence §59 (Brandis Rev. 1973). This rule disqualifying the testimony of a spouse arose from two long-abandoned medieval doctrines; first, that an accused was prohibited from testifying in his own behalf due to his interest in the action, and second, that husband and wife were considered to be one under the law, with the wife possessing no separate legal existence. *Trammel v. United States, supra; Funk v. United States*,

State v. Freeman

290 U.S. 371, 54 S.Ct. 212, 78 L. Ed. 369 (1933); *State v. Alford, supra;* 8 J. Wigmore, Evidence §2227 (McNaughton Rev. 1961 & Supp. 1980). The portion of the common law rule preventing one spouse from testifying on behalf of the other in a criminal proceeding has long been abandoned by statute in this jurisdiction. G.S. 8-57; 1 Stansbury's North Carolina Evidence § 59 (Brandis Rev. 1973). *See also State v. Rice,* 222 N.C. 634, 24 S.E. 2d 483 (1943). The portion of the doctrine which prohibits one spouse from testifying against the other in a criminal proceeding remains in effect under the modern justification that the peace and harmony of the marriage relationship will be preserved and fostered when each spouse may rely on the other's disability to testify. It is thought that the spousal disqualification will encourage free and open communication between marriage partners. *Trammel v. United States, supra; Hawkins v. United States, supra; State v. Alford, supra; State v. Brittain,* 117 N.C. 783, 23 S.E. 433 (1895); *State v. Jolly,* 20 N.C. 108 (1838); 8 J. Wigmore, Evidence §2228 (McNaughton Rev. 1961 & Supp. 1980).

When we consider the common law rule preventing spouses from testifying against each other as to *any* matter at issue in a criminal proceeding in light of its purpose to promote marital harmony, we find that the rule sweeps more broadly than its justification. In the case *sub judice,* defendant invoked the rule of spousal disqualification not to protect confidential marital communications, but to exclude evidence of criminal acts committed in a public place and in the presence of a third person. Under these circumstances, the rule is employed more to thwart the system of justice than to promote family peace. It is difficult to discern how defendant's marriage could be bolstered by excluding Mrs. Freeman's testimony indicating that defendant shot and killed her brother in her presence. In such a situation, the public interest in ascertaining the truth outweighs any policy to promote marital harmony. *Trammel v. United States, supra; State v. Alford, supra. See also State v. Clark,* 296 N.W. 2d 372 (Minn. 1980); 8 J. Wigmre, Evidence § 2332 (McNaughton Rev. 1961 & Supp. 1980). In the event that an application of a common law rule cannot achieve its aim, as in the case before us, then adherence to precedent is the only justification in support of the rule, and the courts are compelled to re-examine the common law doctrine. *Trammel v. United States, supra; Francis v. Southern Pacific Co.,* 333 U.S. 445, 68 S.Ct. 611 (1948) (Black, J., dissenting); *Funk v. United States, supra; State v. Alford, supra.*

**[2]** We hold that the common law rule at issue in this case must be modified to comply with its purpose. Henceforth, spouses shall be incompetent to testify against one another in a criminal proceeding only if the substance of the testimony concerns a "confidential communication" between the marriage partners made during the duration of their marriage.[1] This holding allows marriage partners to speak freely to each other in confidence without fear of being thereafter confronted with the confession in litigation. However, by confining the spousal disqualification to testimony involving "confidential communications" within the marriage, we prohibit the accused spouse from employing the common law rule solely to inhibit the administration of justice. In the words of Jeremy Bentham more than a century and a half ago, our holding prevents the accused in a criminal action from converting his home into "a den of thieves." *Trammel v. United States*, 445 U.S. at 51-52, 100 S. Ct. at 913, 63 L. Ed. 2d at 195, *quoting from* 5 Rationale of Judicial Evidence 340 (1827).

---

[1] The common law rule rendering spouses incompetent to testify against one another in criminal proceedings has been abrogated to some extent in almost every jurisdiction. However, the rule prohibiting testimony which concerns a confidential communication between spouses during the marriage has remained effective in some form in every jurisdiction.

Only six states provide that spouses are completely incompetent to testify against each other in a criminal proceeding: Hawaii Rev. Stat. § 621-18 (1976); Iowa Code Ann. § 622.7 (West 1950); Ohio Rev. Code Ann. § 2945.42 (Page 1980 Supp.).; Pa. Stat. Ann. tit. 19, § 683 (Purdon 1964); Tex. Crim. Pro. Code Ann. § 38.11 (Vernon 1979); Wyo. Stat. § 1-12-104 (1977). Mississippi provides that spouses are incompetent to testify against each other, Miss. Code Ann. § 13-1-5 (1972), but the spousal disqualification may be waived if both partners consent. *See Brewer v. State*, 233 So. 2d 779 (Miss. 1970).

Five jurisdictions have altered the common law spousal disqualification by statute, providing for a privilege against adverse spousal testimony which is vested in the witness spouse alone, but have also provided by statute that spouses are incompetent to testify as to confidential communications made between them during the marriage: D.C. Code Encycl. § 14-306 (West 1966); Ky. Rev. Stat. § 421.210 (Cum. Supp. 1978); Md. Cts. & Jud. Proc. Code Ann. §§ 9-101, 9-105, 9-106 (1980); Mass. Ann. Laws Ch. 233, § 20 (Law. Co-op 1974); Mo. Ann. Stat. § 546.260 (Vernon 1953).

Twelve jurisdictions provide by statute for a privilege aginst adverse spousal testimony which is vested in both spouses or in the accused spouse alone. This privilege extends to all testimony against the accused spouse and to any testimony concerning a confidential communication made between the spouses during the marriage: Colo. Rev. Stat. § 13-90.107 (1973); Idaho Code § 9-203 (Supp. 1980); Mich. Comp. Laws Ann. § 600.2162 (1968); Minn. Stat. Ann. § 595.02 (West Cum. Supp. 1980); Montana Code Ann. § 26-1-802 (1979); Neb. Rev. Stat. § 27-505 (1979); N.J.

State v. Freeman

**[3,4]** Whether a particular segment of testimony includes a "con-

Stat. Ann. § 2A-84A-17 (West 1976); Or. Rev. Stat. § 44.040 (1979); Utah Code Ann. § 78-24-8 (1977); Va. Code § 19.2-271.2 (Cum. Supp. 1980); Wash. Rev. Code Ann. § 5.60.060 (Cum. Supp. 1981); W. Va. Code §§ 57-3-3, 57-3-4 (1966).

Five states entitle the witness-spouse alone to assert a privilege against adverse spousal testimony, with court decisions holding that these statutory provisions do not affect the common law privilege not to testify as to confidential communications within the marriage: Ala. Code § 12-21-227 (1975); Cal. Evid. Code §§ 970-973 (West 1966); Conn. Gen. Stat. Ann. § 54-84 (West Cum. Supp. 1980); Ga. Code Ann. § 38-1604 (1981); La. Rev. Stat. Ann. § 15:461 (West 1967). *See also Arnold v. State*, 353 So. 2d 524 (Ala. 1977); *People v. Delph*, 94 Cal. App. 3d 411, 156 Cal. Rptr. 422 (1979); *Robinson v. State*, 232 Ga. 123, 205 S.E. 2d 210 91974); *State v. Bennett*, 357 So. 2d 1136 (La. 1978). Rhode Island also provides for a privilege against adverse spousal testimony vested in the witness spouse. R.I. Gen. Laws § 12-17-10 (1970). This statute has been interpreted as an alteration of the common law privilege to prevent testimony involving confidential communications; this privilege is now vested in the witness spouse alone. *State v. Angell*, 405 A. 2d 10 (R.I. 1979).

Four states have abolished the spousal disqualification totally in criminal cases, but provide by statute that spouses are incompetent to testify as to confidential communications made during the marriage: Ill. Ann. Stat. ch. 38, § 155-1 (Smith-Hurd Cum. Supp. 1980); Ind. Code Ann. §§ 34-1-14-4, 34-1-14-5 (Burns 1973); N.H. Rev. Stat. Ann. §516:27 (1974); Vt. Stat. Ann. tit. 12, §1605 (1973). Delaware and Tennessee have also abolished the spousal disqualification in criminal proceedings. Del. Code Ann. tit. 11, § 3502 (1979); Tenn. Code Ann. § 40-2404 (1975). These statutes have no effect on the common law rule in those states rendering spouses incompetent to testify as to confidential communications between them. *Mole v. State*, 396 A. 2d 153 (Del. 1978); *Royston v. State*, 450 S.W. 2d 39 (Tenn. Crim. App. 1969).

Nine jurisdictions have abolished the spousal disqualification in criminal proceedings, but also provide by statute that the accused spouse has a privilege to prevent the other spouse from testifying as to any confidential communication between them. Ariz. Rev. Stat. Ann. §§ 12-2231, 12-2232 (1956 & Supp. 1980); Ark. Stat. Ann. § 28-1001, Rules 501 and 504 (1979); Fla. Stat. Ann. §§ 90:501, 90:504 (Harrison 1979); Kan. Stat. Ann. §§ 60-407, 60-428 (1976); Me. Rev. Stat. Ann., Maine Rules of Evidence, Rules 501, 504 (West Supp. 1980); N.Y. Crim. Proc. Law § 60.10 (McKinney 1971), N.Y. Civ. Proc. Law § 4502, 4512 (McKinney 1963); N.D. Cent. Code, N.D. Rules of Evid., Rules 501, 504 (Supp. 1979); Okla. Stat. Ann. tit. 12, §§ 2103, 2501, 2504 (West 1980); S.D. Codified Laws Ann. §§ 19-13-1, 19-13-12 thru 19-13-15 (1979). New Mexico and South Carolina have abolished the spousal disqualification in criminal proceedings and provided by statute that the witness spouse alone may assert a privilege not to testify as to confidential communications between the spouses during the marriage: N.M. Stat. Ann. § 38-6-6 (1978); S.C. Code § 19-11-30 (1977). *See also State v. Motes*, 264 S.C. 317, 215 S.E. 2d 190 (1975).

The United States Supreme Court held in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed. 2d 186 (1980), that in federal courts the privilege against adverse spousal testimony shall vest only in the witness spouse. This decision did not affect the independent rule establishing a privilege to prohibit testimony concerning a confidential marital communication. *Blau v. United States*, 340 U.S. 332, 71 S.Ct. 301, 95 L. Ed. 306 (1951).

fidential communication" within the meaning of the rule we adopt in this case is to be determined by the guidelines set forth in our previous decisions interpreting the term under G.S. 8-56, the statute preserving a privilege in civil actions not to testify as to "confidential communications" with one's spouse. In making such a determination, the question is whether the communication, whatever it contains, was induced by the marital relationship and prompted by the affection, confidence, and loyalty engendered by such relationship. *Wright v. Wright*, 281 N.C. 159, 188 S.E. 2d 317 (1972); *Hicks v. Hicks*, 271 N.C. 204, 155 S.E. 2d 799 (1967); *Hagedorn v. Hagedorn*, 211 N.C. 175, 189 S.E. 507 (1937); *McCoy v. Justice*, 199 N.C. 602, 155 S.E. 452 (1930); *State v. Freeman*, 197 N.C. 376, 148 S.E. 450 (1929); *Whitford v. North State Life Ins. Co.*, 163 N.C. 223, 79 S.E. 501 (1913). When this definition is applied to the facts of the case *sub judice*, it is apparent that Mrs. Freeman's proposed testimony included no confidential communication which would render it incompetent under the rule established in this case. Mrs. Freeman stipulated that had she been allowed to testify, she would have stated that defendant parked his car in a public parking lot, approached her and her brother carrying a shotgun, asked if they wished to speak with him, and immediately discharged the shotgun, killing Mrs. Freeman's brother. Such actions in a public place and in the presence of a third person could not have been a communication made in the confidence of the marital relationship or one which was induced by affection and loyalty in the marriage. *See, e.g., Hicks v. Hicks, supra; State v. Freeman, supra.* Consequently, Mrs. Freeman's testimony is competent and admissible under the rule adopted in this case.[2]

---

[2] It would be possible to find the wife competent to testify in this case on the rationale that the partners had been separated for over three years, there was no possibility of reconciliation, and therefore there was no marital relationship to protect. Although this reasoning works well in this case, it is unsatisfactory as a precedent. One of the purposes of the requirement that spouses live in a state of separation for one year before obtaining a no-fault divorce is to insure that there is no possibility of reconciliation before the divorce becomes final. Thus, the public policy to promote peace and harmony in the marriage still exists even where the parties are separated, so long as there is a possibility of reconciliation. Consequently, it would be unwise to abolish the spousal disqualification in criminal proceedings merely on the ground that the parties were living in a state of separation. It would be necessary for the court to make findings of fact in each case regarding the possibility of reconciliation of the partners. The vast majority of courts which have dealt with the effect of separation on the rule rendering spouses incompetent to testify against each other in a criminal proceeding have held that it would unduly burden the courts to require

For the reasons stated above, we find that although the trial court correctly followed the previous decisions of this Court in granting defendant's motion *in limine* to suppress the testimony of his wife, the suppression of Mrs. Freeman's testimony was error under the rule established in this case. Accordingly, the judgment of the trial court is

Reversed.

Justice MEYER did not participate in the consideration or decision of this case.

---

them to make findings on the possibility of reconciliation in each case. The status of separation has therefore had no effect on the common law rule. 98 A.L.R. 3d 1285 (1980). *See especially People v. Oyola*, 6 N.Y. 2d 259, 160 N.E. 2d 494, 18 N.Y.S. 2d 203 (1959); *People v. Fields*, 38 App. Div. 2d 231, 328 N.Y.S. 2d 542, *aff'd on lower court opinion*, 31 N.Y. 2d 713, 289 N.E. 2d 557, 337 N.Y.S. 2d 517 (1972).

On the other hand, the abolition of the spousal disqualification, except where the subject matter of the testimony concerns a "confidential communication" within the marriage, serves the dual purpose of satisfying the aim of the common law rule to promote marital harmony and avoiding an undue burden on the courts. The courts of this state are accustomed to determining whether testimony concerns a "confidential communication" within the marriage. This determination must be made in civil cases involving a "confidential communication." G.S. 8-56.