STATE OF NORTH CAROLINA v. BENJAMIN F. HOLMES AND BERNARD PENN

No. 24PA91

(Filed 31 January 1992)

**Evidence and Witnesses § 2607 (NCI4th) — murder — testimony by wife against husband — not admissible**

The trial court erred in a murder prosecution by admitting into evidence over defendant's objection privileged, confidential communications between defendant and his wife. N.C.G.S. § 8-56 provides essentially that while no husband or wife shall be compellable to disclose any confidential communications made by one to the other during their marriage, each is "competent and compellable to give evidence, as any other witness, on behalf of any party to such suit, action, or proceeding." On the other hand, N.C.G.S. § 8-57, when read properly, provides that the spouse of a defendant is competent to testify for the State and against defendant in five instances listed in the statute, provided that "[n]o husband or wife shall be compellable *in any event* to disclose any confidential communications made by one to the other during their marriage." Neither of these statutes destroys the common law privilege against

**STATE v. HOLMES**

[330 N.C. 826 (1992)]

disclosure of confidential marital communications; rather, they protect the privilege.

**Am Jur 2d, Witnesses §§ 149-151.**

Justice WEBB dissenting

Justices MEYER and MITCHELL join in this dissenting opinion.

ON writ of certiorari pursuant to N.C.G.S. § 7A-32(b) and Rule 21(a)(2) of the Rules of Appellate Procedure to review a unanimous decision of the Court of Appeals, 101 N.C. App. 229, 398 S.E.2d 873 (1990), ordering a new trial for defendant Penn but finding no error in the trial of defendant Holmes wherein judgment was entered on 16 December 1988 by *Beaty, J.,* in Superior Court, FORSYTH County. Heard in the Supreme Court 15 October 1991.

*Lacy H. Thornburg, Attorney General, by Mabel Y. Bullock, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellee Penn.*

FRYE, Justice.

Defendants Holmes and Penn were tried together for the murder of "Danny Boy" Hooper. The State's evidence showed that on 11 January 1988, Holmes, Penn, and the deceased left a liquor house in an automobile driven by Penn. Approximately twenty-four hours later, Hooper's body was found lying in some woods in Winston-Salem.

The State called as a witness Debra Penn, the wife of defendant Penn and the sister of defendant Holmes. Penn objected to the testimony of his wife as to a conversation they had when no one else was present and to certain conduct by him which she observed at that time. After a voir dire hearing out of the presence of the jury, the court overruled Penn's objection.

The issue in this case is whether a witness spouse may testify at trial as to confidential communications made to her by defendant spouse over defendant spouse's objection and assertion of privilege. We hold that she may not.

Over defendant Penn's objection, Debra Penn testified that at approximately 3:15 p.m., on 11 January 1988, defendant Penn, Holmes, and Hooper came to the house in which she lived with defendant Penn and their children. After Hooper used the telephone, Penn told Holmes and Hooper "to go outside—step out on the porch, that he wanted to talk to [Debra] about something." After the two men left, Penn took a gun from a cabinet. He told his wife that he was "going to shoot and kill the guy, Danny Boy, because he had messed up his money." Debra Penn testified further that Penn, whom she said trusted her, wrapped the gun in a sweater and left with the others at approximately 3:40 p.m. She said that Penn returned at approximately 11:30 p.m. that night. She admitted she told an entirely different story to the officers on 13 January 1988.

Both Holmes and Penn were found guilty of second degree murder. The trial court found as an aggravating factor for each defendant that he had a prior conviction or convictions for criminal offenses punishable by more than sixty days confinement. The court found no mitigating factors for either defendant and sentenced each of them to fifty years in prison.

The Court of Appeals found no error in the trial of Holmes. It ordered a new trial for Penn (hereinafter defendant) because Penn's wife was allowed to testify, over his objection, as to confidential communications between them. On 7 February 1991, we allowed the State's petition for certiorari to review the decision of the Court of Appeals as it pertains to defendant Penn.

The State contends that Debra Penn was competent to testify about her husband's confidential marital communications and that the privilege pertaining to such communications belonged to her and not to her husband. Defendant contends that the Court of Appeals correctly determined that he is entitled to a new trial because the trial court erroneously admitted privileged confidential communications between him and his wife into evidence. We agree with defendant and affirm the decision of the Court of Appeals.

The common law has long recognized a privilege protecting confidential marital communications, that is, information privately disclosed between a husband and wife in the confidence of the marital relationship. *See Trammel v. United States*, 445 U.S. 40, 63 L. Ed. 2d 186 (1980) (citing *Blau v. United States*, 340 U.S. 332, 95 L. Ed. 306 (1951)). This privilege is different from and independent of the general common law rule making the spouse

of a defendant incompetent to testify either for or against the defendant in a criminal proceeding. *Trammel*, 445 U.S. 40, 63 L. Ed. 2d 186. At common law, the general rule regarding spousal testimony was that neither spouse could testify for or against the other in either a civil or criminal proceeding. *Rice v. Keith*, 63 N.C. 319 (1869). This spousal incompetency rule was later relaxed to provide that a spouse was competent to testify in favor of the other spouse and be subject to cross-examination. *See generally* Douglas P. Arthurs, Note, *Spousal Testimony in Criminal Proceedings*, 17 Wake Forest L. Rev. 990. This modification of the general rule of spousal incompetency gave rise to a rule against adverse spousal testimony. *See id.* The rule against adverse spousal testimony, although subject to a few exceptions, left intact the privilege against the disclosure of confidential marital communications. *See State v. Jolly*, 20 N.C. (3 Dev. & Bat.) 108 (1838) (recognizing the rule concerning confidential marital communications). This privilege protected both spouses such that neither spouse could disclose a confidential marital communication over the objection of the other. *Supra* Note, 17 Wake Forest L. Rev. at 1000-01.

The State contends that N.C.G.S. § 8-57 abolishes the common law rule against the disclosure of confidential marital communications, leaving only a rule against being *compelled* to disclose a confidential marital communication. The State argues that section 8-57(b) makes the spouse competent to testify, and section 8-57(c) gives the privilege of not being compelled to the witness spouse, thus effectively overruling *State v. Freeman*, 302 N.C. 591, 276 S.E.2d 450 (1981). We disagree. We believe that while section 8-57 modifies the rule against adverse spousal testimony, it preserves the rule against disclosure of confidential marital communications.

Section 8-57 provides:

(a) The spouse of the defendant shall be a competent witness for the defendant in all criminal actions, but the failure of the defendant to call such spouse as a witness shall not be used against him. Such spouse is subject to cross-examination as are other witnesses.

(b) The spouse of the defendant shall be competent but not compellable to testify for the State against the defendant in any criminal action or grand jury proceedings, except that the spouse of the defendant shall be both competent and compellable to so testify:

(1) In a prosecution for bigamy or criminal cohabitation, to prove the fact of marriage and facts tending to show the absence of divorce or annulment;

(2) In a prosecution for assaulting or communicating a threat to the other spouse;

(3) In a prosecution for trespass in or upon the separate lands or residence of the other spouse when living separate and apart from each other by mutual consent or court order;

(4) In a prosecution for abandonment of or failure to provide support for the other spouse or their child;

(5) In a prosecution of one spouse for any other criminal offense against the minor child of either spouse, including any illegitimate or adopted or foster child of either spouse.

(c) *No husband or wife shall be compellable in any event to disclose any confidential communication made by one to the other during their marriage.*

N.C.G.S. § 8-57 (1986) (emphasis added).

Prior to its amendment in 1983, section 8-57 provided as follows:

Husband and wife as witnesses in criminal actions.

The husband or wife of the defendant, in all criminal actions or proceedings, shall be a competent witness for the defendant, but the failure of such witness to be examined shall not be used to the prejudice of the defense. Every such person examined as a witness shall be subject to be cross-examined as are other witnesses. *No husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage.* Nothing herein shall render any spouse competent or compellable to give evidence against the other spouse in any criminal action or proceeding, except to prove the fact of marriage and facts tending to show the absence of divorce or annulment in cases of bigamy and in cases of criminal cohabitation in violation of the provisions of G.S. 14-183, and except that in all criminal prosecutions of a spouse for an assault upon the other spouse,

all criminal prosecutions of a spouse for communicating a threat to the other spouse, or in any criminal prosecution of a spouse for trespass in or upon the separate residence of the other spouse when living separate and apart from each other by mutual consent or by court order, or for any criminal offense against a legitimate or illegitimate or adopted or foster minor child of either spouse, or for abandonment, or for neglecting to provide for the spouse's support, or the support of the children of such spouse, it shall be lawful to examine a spouse in behalf of the State against the other spouse: Provided that this section shall not affect pending litigation relating to a criminal offense against a minor child.

(Emphasis added.)

The State contends, essentially, that the legislature in 1983 amended N.C.G.S. § 8-57 so as to make the spouse competent but not compellable to testify against a defendant spouse regarding a confidential marital communication, thus overruling *Freeman*. While this view seems plausible at first glance, when the history of this statute is considered together with the cases interpreting it, it is clear that the 1983 version of section 8-57 is consistent with *Freeman*. As explained in the commentary to Rule 601 of the North Carolina Rules of Evidence, the Court in *Freeman* "removed the incompetence to testify against the other spouse (except to the extent that it preserved the privilege against disclosure of confidential communications)." N.C.G.S. § 8C-1, Rule 601 cmt. (1988). While the Court used the words "incompetent to testify" as to confidential marital communications, the effect of the Court's holding was to preserve the privilege against disclosure of confidential marital communications.

In North Carolina, the common law rule preventing one spouse from testifying on behalf of the other in a criminal proceeding was abandoned by statute many years ago. *Freeman*, 302 N.C. at 595, 276 S.E.2d at 452. The incompetency of the wife as a witness for her husband was abandoned by the legislature in 1881. 1881 N.C. Sess. Laws, ch. 110, s. 3 ("on the trial of all criminal actions, the wife of the defendant shall be a competent witness for defendant"). Through various amendments and rewrites, this provision is now codified as N.C.G.S. § 8-57(a) as follows:

(a) The spouse of the defendant shall be a competent witness for the defendant in all criminal actions, but the failure of

the defendant to call such spouse as a witness shall not be used against him. Such spouse is subject to cross-examination as are other witnesses.

This subsection carries forward the first two sentences of N.C.G.S. § 8-57 as it appeared in the General Statutes at the time that *Freeman* was decided. The next sentence of the statute, at the time of *Freeman*, was as follows: "No husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage." This sentence, we believe, made it clear that, notwithstanding the right to cross-examine a spouse testifying on behalf of another spouse, this right of cross-examination did not encompass the right to compel the testifying spouse to disclose a confidential marital communication. This same provision has remained a part of N.C.G.S. § 8-57 through several amendments, and appears in the current version as subsection (c) with the insertion of the words "in any event" between the words "compellable" and "to." N.C.G.S. § 8-57(c).

The common law rule against adverse spousal testimony has been modified by statute in North Carolina, creating several exceptions. *See, e.g.*, 1856-57 Sess. Laws, ch. 23 ("in all criminal prosecutions of a husband for an assault and battery upon the person of the wife, it shall and may be lawful to introduce and examine the wife in behalf of the State against her said husband; any law or custom to the contrary notwithstanding"); 1868-69 Sess. Laws, ch. 210, s. 4 (wife competent witness to fact of abandonment or neglect to provide adequate support for wife and children); 1957 N.C. Sess Laws, ch. 1036, s. 1 (rewriting fourth sentence of N.C.G.S. § 8-57 to provide: "Nothing herein shall render any husband· or wife competent or compellable to give evidence against each other in any criminal action or proceeding, except to prove the fact of marriage and facts tending to show the absence of divorce . . . and except that [in certain other cases] it shall be lawful to examine the wife in behalf of the State against the husband.").

Except as modified by N.C.G.S. § 8-57, the common law rule against adverse spousal testimony remained in full effect in North Carolina at the time this Court decided the case of *State v. Freeman*, 302 N.C. 591, 276 S.E.2d 450. As stated by the Court in *Freeman*, "G.S. 8-57 and its predecessors merely state that, aside from the exceptions listed therein, the common law rule pertaining to the competency of spouses to testify against each other remains un-

changed and in full effect." *Id.* at 594, 276 S.E.2d at 452. The Court then proceeded to change the common law rule against adverse spousal testimony by abolishing it in its entirety except as necessary to preserve the privilege against disclosure of confidential marital communications. Although the language used by the Court was consonant with the language used in the statute, it is clear from the Court's reasoning that the exception protected the confidential marital communications privilege. "Henceforth, spouses shall be incompetent to testify against one another in a criminal proceeding only if the substance of the testimony concerns a 'confidential communication' between the marriage partners made during the duration of their marriage. This holding allows marriage partners to speak freely to each other in confidence without fear of being thereafter confronted with the confession in litigation." *Id.* at 596, 276 S.E.2d at 453-54.

The *Freeman* Court's holding regarding the privilege against disclosure of confidential marital communications is further illuminated by its reference to N.C.G.S. § 8-56, "the statute preserving a privilege in civil actions not to testify as to 'confidential communications' with one's spouse." *Id.* at 598, 276 S.E.2d at 454. Whether the challenged testimony includes a "confidential communication" within the meaning of the new rule "is to be determined by the guidelines set forth in our previous decisions interpreting the term under G.S. 8-56," the Court said. Applying those guidelines to the case before it, the *Freeman* Court held that the testimony in question related to actions of defendant husband in a public parking lot in the presence of a third person and therefore "could not have been a communication made in the confidence of the marital relationship or one which was induced by affection and loyalty in the marriage. [Citations omitted.] Consequently, Mrs. Freeman's testimony is competent and admissible under the rule adopted in this case." *Id.*, 276 S.E.2d at 455.

While our cases and statutes have not been models of clarity, collectively they stand for the proposition that a confidential communication between husband and wife is privileged and that this privilege, even in criminal cases, survives both the North Carolina Rules of Evidence and the amendments to N.C.G.S. § 8-57. The statute makes it clear that neither spouse may be compelled to disclose confidential communications between husband and wife when testifying as a witness. The fact that a witness is *competent* to testify, even as to a confidential communication, and the fact

STATE v. HOLMES

[330 N.C. 826 (1992)]

that the spouse is willing to testify, do not answer the question of whether a witness may voluntarily give such testimony over the objection of the defendant spouse who asserts a privilege against such testimony.

N.C.G.S. § 8-56 provides essentially that while no husband or wife shall be compellable to disclose any confidential communications made by one to the other during their marriage, each is "competent and compellable to give evidence, as any other witness, on behalf of any party to such suit, action or proceeding." On the other hand, N.C.G.S. § 8-57, when read properly, provides that the spouse of a defendant is competent to testify for or against a defendant and may be compelled to testify for the State and against defendant in the five instances listed in section 8-57(b), provided that "[n]o husband or wife shall be compellable *in any event* to disclose any confidential communications made by one to the other during their marriage." N.C.G.S. § 8-57(c) (emphasis added). Neither of these statutes destroys the common law privilege against disclosure of confidential marital communications; rather, they protect the privilege.

Section 8-57.1 provides that notwithstanding the provisions of sections 8-56 and 8-57, "the husband-wife *privilege* shall not be ground for excluding evidence [under certain circumstances relating to the abuse or neglect of a child under the age of sixteen years]." (Emphasis added.) The "privilege" is the spousal privilege of preventing the other spouse from disclosing any confidential communication made by one to the other during their marriage as set out in section 8-56, and the defendant spouse's privilege protected in section 8-57(c) to keep the other spouse *in any event* from disclosing any confidential communication made by· one to the other during their marriage. If, as the State suggests, section 8-57 abolished the husband-wife privilege against disclosure of confidential communications made by one to the other during their marriage, section 8-57.1 would seem to be unnecessary. The same· is true for section 8-57.2 which permits the presumed father or mother of a child to testify regarding paternity of the child, including nonaccess, "regardless of any *privilege* which may otherwise apply." (Emphasis added.)

This Court has not always spoken with clarity when discussing "privilege." In *State v. Britt,* 320 N.C. 705, 709 n.1, 360 S.E.2d 660, 662 n.1 (1987), we noted that "the privilege belongs to the

wife, and not to the defendant, and it does not appear that anyone advised her that she had a right to refuse to testify." The privilege in *Britt*, as noted by this Court in *State v. McQueen*, 324 N.C. 118, 137, 377 S.E.2d 38, 49 (1989), is the privilege of choosing not to testify against the other spouse. This should not be confused with the privilege of the communicating spouse to prevent disclosure of confidential marital communications.

In the instant case, we agree with the Court of Appeals that "all of the circumstances . . . show that Penn's statements were induced by the confidence of his marital relationship." At trial, when the State called Debra Penn as a witness, defendant Penn immediately objected and asserted his privilege. Debra Penn testified, over this objection, that on 11 January 1988 she was at home when Penn, Holmes, and Hooper arrived. After a few minutes, defendant instructed the two other men to go outside the house because he wanted to talk to his wife about something. After the two men left, and while defendant and his wife were alone, defendant reached into a kitchen cabinet and took out a gun. Defendant then told Debra Penn, his wife, that he was going to shoot and kill Hooper because Hooper had "messed up some of his money." Defendant then wrapped the gun in a sweater and left. Debra Penn testified that defendant trusted her. All of these circumstances clearly show that defendant's statements, made only in the presence of his wife, were induced by the confidence of the marital relationship. *See Hicks v. Hicks*, 271 N.C. 204, 155 S.E.2d 799 (1967). We hold, therefore, that these statements were privileged and protected. We also believe that defendant's actions in the room alone with his wife were protected. An action may be protected if it is intended to be a communication and is the type of act induced by the marital relationship. *See generally State v. Suits*, 296 N.C. 553, 251 S.E.2d 607 (1979); *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978). Just like the statements at issue here, defendant's actions also appear to have arisen out of the trust engendered by his marriage to Debra Penn. Accordingly, we hold that the wife's testimony regarding defendant's removal of the gun was also inadmissible over defendant's objection.

We agree with the Court of Appeals that the trial court erred in allowing Debra Penn to testify over defendant's objection as to confidential marital communications made to her by defendant. Defendant had the right to assert the privilege against his wife and prohibit her from testifying both about his statements to her

and about his actions in procuring the firearm. Accordingly, we agree with the unanimous panel of the Court of Appeals that defendant Penn is entitled to a new trial because the trial court admitted into evidence over his objection, privileged, confidential communications between him and his wife. We therefore affirm the decision of the Court of Appeals.

Affirmed.

Justice WEBB dissenting.

I dissent from the majority. It appears to me that the resolution of this case depends on what the General Assembly intended for the word "competent" to mean. The majority says that although the General Assembly has made persons competent to testify against their spouses, a defendant spouse has the privilege to prevent the disclosure of confidential communications between the parties. I believe the majority is in error.

I believe that the parts of N.C.G.S. § 8-57(b) that render a spouse competent to testify without any stated exception for confidential communications, coupled with the statement in subsection (c) that a spouse is not compellable to testify as to a confidential communication, shows that the General Assembly intended to make a spouse able to testify as to confidential communications in spite of an objection by the defendant spouse. If a defendant can stop his or her spouse from testifying as to confidential communications, there is no need for that part of subsection (c) which provides that a spouse may not be compelled to testify as to confidential communications. The majority has made this part of the statute to be surplus.

The majority says the "common law has long recognized a privilege protecting confidential marital communications, that is, information privately disclosed between a husband and wife in the confidence of the marital relationship." If this is true it has never before today in this jurisdiction been recognized independently of the rule which made a person incompetent to testify against his or her spouse. Prior to *State v. Freeman*, 302 N.C. 591, 276 S.E.2d 450 (1981), a person was incompetent to testify against his or her spouse. There was no reason for a rule barring testimony as to confidential communications. I believe the rule excluding confidential marital communications was based on the incompetency

of a spouse as a witness and when the incompetency was removed that removed the bar to confidential communications.

One difficulty with the majority opinion is that it treats N.C.G.S. § 8-57 as not being complete. I believe when this section was revised and adopted by the General Assembly, it was intended to state the law as to marital testimony. The majority holds that there is a phase of the law dealing with confidential communications which is not covered by the statute. This is contrary to the manner in which the General Assembly normally operates and I do not believe it was its intention to leave a part of the law uncovered.

As the majority observes, in *State v. Freeman*, 302 N.C. 591, 596, 276 S.E.2d 450, 453, we said, when speaking of confidential marital communications, that a spouse was incompetent to testify to them. It is only natural that when the General Assembly was revising N.C.G.S. § 8-57 it would believe it could change the rule by saying the person is competent to testify against his or her spouse.

I vote to reverse the Court of Appeals.

Justices MEYER and MITCHELL join in this dissenting opinion.