STATE OF NORTH CAROLINA v. JAMES JACKSON BLALOCK

No. 7210SC225

(Filed 29 March 1972)

1. **Criminal Law §§ 73, 131— hearsay evidence — competency to show state of mind**

   In a hearing on a motion for a new trial on the ground of newly discovered evidence wherein defendant introduced a statement signed by the prosecutrix repudiating her trial testimony that she had been raped by defendant, testimony by the prosecutrix that she had been told by defendant's witness after the trial that defendant and his co-defendant worked for the Mafia, that they would be after her because of her testimony at the trial, that she "wouldn't live" and that she "would die," that after the original trial she received numerous telephone calls in which the caller did not speak but merely breathed into the phone, and that someone had tried to break into her house, *held* competent as an exception to the hearsay rule to show the state of mind of the prosecutrix when she signed the statement.

2. **Criminal Law § 131— new trial for newly discovered evidence**

   The granting of a new trial in a criminal case on the ground of newly discovered evidence rests in the sound discretion of the trial court. G.S. 15-174.

3. **Criminal Law § 131— denial of new trial for newly discovered evidence — recantation of trial testimony**

> The trial court did not err in the denial of defendant's motion for a new trial on the ground of newly discovered evidence where defendant introduced at the hearing a statement signed by the prosecutrix in which she recanted her trial testimony that she had been raped by defendant, but the prosecutrix repudiated her recantation on the witness stand and testified that she signed the statement because of threats, coercion, intimidation and harassment.

APPEAL by defendant from *Braswell, Judge,* 7 September 1971 Session of Superior Court held in WAKE County.

Defendant was tried at the 2 September 1969 Session of Superior Court held in Wake County on two bills of indictment, each charging him with the capital crime of rape. On the bill of indictment in which he was charged with raping one Suzanne Beam (Beam), he was convicted of the lesser included offense of an assault with intent to commit rape and was given a prison sentence of fifteen years. On the bill of indictment in which he was charged with raping one Patricia Ann Hinton (Hinton), he was convicted of an assault upon a female and was given a prison sentence of six months to begin at the expiration of the fifteen year sentence, and a fine of $500.00.

From these convictions, he appealed to the Court of Appeals which found no error in his trial. See *State v. Blalock,* 9 N.C. App. 94, 175 S.E. 2d 716 (1970). Defendant's petitions for writ of certiorari were denied by the North Carolina Supreme Court on 28 August 1970 (277 N.C. 113) and by the United States Supreme Court on 22 February 1971 (401 U.S. 912, 27 L.Ed. 2d 812, 91 S.Ct. 881).

On 4 September 1970 defendant, with his co-defendant Meril Lane Andrews, filed a motion for a new trial on the grounds of newly discovered evidence. In his motion defendant asserted that Beam had made a recantation of her testimony given at his original trial and that this testimony had been crucial to the State's case and essential for a conviction.

On 15 July 1971 defendant filed what he entitles a "Supplement to Pending Motion for a New Trial for Newly Discovered Evidence," in which he asserted that the State had suppressed evidence "that was material and relevant to the credibility of the main State prosecuting witness, Beverly Suzanne Beam." In support of this supplemental motion, he

alleged that he was held in jail without privilege of bond pending the trial of these capital felonies; that his attorney intentionally did not ask Beam about her prior criminal record because neither the defendant nor his attorney knew whether she had one; that Suzanne Beam had theretofore been convicted of crime and was on probation at the time; and that it was the solicitor's duty to bring out this fact when the defendants did not do so. The defendant further alleged that Beam committed perjury in testifying that she had not previously had an abortion performed.

The hearing on the motions was heard in the superior court in September 1971. The defendant and the State offered evidence.

The evidence for the defendant tended to show, among other things, that Beam and Hinton, the alleged victims in the original trial of the defendant for rape, each had signed a written recantation. Both of these persons had testified in substance at the original trial that the defendant had raped them. Defendant's Exhibit #1, written and signed by Beam, reads as follows:

> "On my own accord, I would like to drop charges against the defendants, Buddy Andrews and Jackie Blalock, as of this date November 17, 1969.

> Due to the confusion which occurred on that night, my mind was unstable, and I was very frightened and scared at that time. Buddy Andrews and Jackie Blalock did not attempt to rape me."

Beam, a witness for defendant (petitioner) at the hearing on this motion for a new trial, testified on cross-examination:

> "The statement that has been introduced as defendants' Exhibit #1 which I identified is not true. I testified at the trial of these two defendants that both raped me. I testified at the trial that both of them raped me, had sexual intercourse with me—by force and against my will. That was true. The reason I signed the statement that has been introduced was I was very frightened. I was having phone calls. I had a Mr. Joe Ferrell to come over to my

house one night. This was after the trial and before I signed the statement. And he told me that—

\* \* \*

He told me that because of my testimony at the trial that Andrews and Blalock would be after me; they worked for the Mafia; that I wouldn't live, that I would die and— I mean it was just one thing right after another they were telling me and it upset me terribly. He talked with Becky Blalock about this.

\* \* \*

Other things happened which entered into causing me to sign that statement, Defendants' Exhibit #1. I had some phone calls that—I have an unlisted number to begin with and only—and I was having these phone calls and they wouldn't say anything, they would stay on the phone and I could hear the breathing and hang up. I know that Becky Blalock did work for the telephone company at that time before she quit.

I don't know how many such telephone calls I had. It was just too many to count. There were several at night. In addition to the telephone calls there was another incident that caused me concern. Someone tried to break into my house."

Defendant's Exhibit #3 at the hearing was an affidavit executed by Hinton on 1 March 1971 before a Notary Public in the State of Minnesota. The pertinent parts of this affidavit read:

"2. That your affiant signed warrants against the defendants charging them with rape and testified at their trials that in fact defendants did have sexual intercourse with affiant against her will.

3. That in fact the defendants Blalock and Andrews did not have intercourse with affiant; that at no time did either Blalock or Andrews penetrate your affiant's private parts and at no time did either defendant attempt to penetrate the private parts of your affiant."

Defendant offered other evidence tending to show that Beam had not been threatened or coerced by anyone and that

many men had had sexual intercourse with Beam, that Beam had made statements to one Cathy Mitchell and others that the defendant had not raped her, and also that Cathy Mitchell went to Minnesota and obtained the affidavit of Hinton.

The State offered evidence which in substance tended to show the following: The alleged victim Hinton at the time of the hearing was residing in Minnesota and, in a telephone conversation, had repudiated the affidavit signed by her and offered by the defendant. Cathy Mitchell had called the other alleged victim Beam so frequently requesting that she write a statement to the effect that she had not actually been raped by the defendant that Beam had stopped answering the telephone; furthermore, Cathy Mitchell had told her what to put in the statement and had offered her money. A friend of Cathy Mitchell had also offered Beam money, and one William Edward Pitchford had been offered a thousand dollars in August, 1970, by another party to try to get Beam "to drop the charges." The evidence for the State also tended to show that Cathy Mitchell had been instrumental in obtaining on behalf of the defendant an affidavit from one Steve Rudisill and a written statement from one Ronda Clark, both of which were repudiated at the hearing. Attorney Wade Smith, who testified as a defendant's witness, testified on cross-examination that he had formerly represented the defendant and that both Hinton and Joyce Rudisill, in talking to him, had on occasion repudiated the contents of their affidavits offered by the defendant.

In a judgment bearing the date of 16 September 1971 and covering sixteen pages of the record, Judge Braswell, after the plenary hearing and after making factual findings and drawing legal conclusions based on his findings, denied the "Supplement to Pending Motion for a New Trial for Newly Discovered Evidence," and after making further extensive findings of fact and conclusions of law, said:

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DE-CREED that the motion for a new trial on the ground of newly discovered evidence is denied and dismissed;

That there is no believable evidence entitling the defendants to a new trial, and therefore there is no evidence to support a new trial, and that beyond a reasonable doubt it would be a miscarriage of justice to allow a new trial."

There also appears another order dated 16 September 1971 (covering about four pages of the record) in which, after making findings of fact and stating conclusions of law, Judge Braswell denied a petition filed by the defendant for a writ of habeas corpus and also denied defendant's motion in arrest of judgment.

The defendant gave notice of appeal to the Court of Appeals and filed an affidavit of indigency in which he requested that counsel be appointed for him, and counsel was appointed. Prior to this point in all of the proceedings, the defendant had been represented by privately retained counsel.

*Attorney General Morgan, Assistant Attorney General Satisky, and Associate Attorney Haskell for the State.*

*Garland B. Daniel for defendant appellant.*

MALLARD, Chief Judge.

[1] The defendant's first assignment of error is that the judge committed error in allowing defendant's witness Beam to testify that defendant's witness Joe Ferrell, after the original trial, had told her that defendant and his co-defendant Andrews worked for the Mafia and because of her testimony at the trial, they would be after her; that she "wouldn't live"; and that she "would die." Defendant contends that this was hearsay evidence and should have been excluded. Beam had just repudiated, on cross-examination, what had been stated by her in defendant's Exhibit #1 and was explaining why she had repudiated her written recantation. This evidence was competent for the purpose of showing the witness's state of mind at the time she signed the recantation offered by the defendant as his Exhibit #1. The rule is stated in 2 Strong, N. C. Index 2d, Criminal Law, § 73, p. 573, as follows:

> "While testimony of extrajudicial assertions of a third person is incompetent to prove the truth of the facts asserted by such person, the hearsay rule does not preclude testimony of such assertions for the purpose of showing the state of mind of the witness in consequence of such assertions and not for the purpose of proving the matters asserted."

See also, *State v. Robbins*, 275 N.C. 537, 169 S.E. 2d 858 (1969) and *State v. Black*, 230 N.C. 448, 53 S.E. 2d 443 (1949).

Defendant's second assignment of error is that the judge committed error in admitting testimony by Beam that after the original trial, she received numerous telephone calls and when she answered, heard only a noise as if someone were "breathing" into the telephone, and also her testimony that someone tried to break into her house. The witness again was testifying as to her state of mind at the time she signed the recantation, and it was competent for her to do so. This assignment of error is overruled.

The defendant's third and last assignment of error is that the judge abused his discretion in his findings of fact, his conclusions of law, in signing the judgment, and in denying the motion for a new trial.

G.S. 15-174 reads as follows: "The courts may grant new trials in criminal cases when the defendant is found guilty, under the same rules and regulations as in civil cases." Motions for new trials for newly discovered evidence in civil cases are now controlled by the provisions of G.S. 1A-1, Rule 60(b)(2).

The prerequisite that must be established by the moving party to obtain a new trial on the grounds of newly discovered evidence has not been changed and is set forth in *State v. Casey*, 201 N.C. 620, 161 S.E. 81 (1931). The facts found do not meet these requirements.

[2, 3] The granting of a new trial in this criminal case on the grounds of newly discovered evidence rested within the sound discretion of the trial court. 7 Strong, N. C. Index 2d, Trial, § 49. No abuse of discretion has been shown. *Frye & Sons, Inc. v. Francis*, 242 N.C. 107, 86 S.E. 2d 790 (1955). The factual situation in the case of *State v. Ellers*, 234 N.C. 42, 65 S.E. 2d 503 (1951), relied on by the defendant, is distinguishable. There, the State's witness repudiated his testimony before judgment. Here, the State's witness repudiated her recantation on the witness stand. In the testimony at this hearing the alleged victim, explaining the repudiation of her recantation, told of threats, coercion, intimidation and harassment. The testimony of another witness indicated attempted bribery. The trial judge aptly said, "(T)his is a disgusting matter. It is rotten to the core."

We have carefully examined the record and hold that the material facts found by Judge Braswell are supported by com-

petent evidence, that the material conclusions of law are based upon the facts so found, and that the facts found and conclusions of law support the judgment.

In the denial of the motion for a new trial on the ground of newly discovered evidence, we find no error.

Affirmed.

Judges MORRIS and PARKER concur.