STATE OF NORTH CAROLINA v. LEO DWITT WATERS

No. 340A82

(Filed 3 May 1983)

1. **Constitutional Law § 30; Bills of Discovery § 6— police records and statements of witnesses—discovery during trial not allowed**

   The trial court did not commit prejudicial error in refusing to permit defendant to discover during trial the contents of certain police records and statements of prospective witnesses where the information contained therein would have added nothing to the evidence produced at trial and would have been of no assistance to the defendant at trial.

2. **Criminal Law § 66.9— pretrial showup—no taint of in-court identification**

   A victim's in-court identification of defendant could not have been tainted by a pretrial showup in which the victim was shown a single photograph of a white male matching her assailant's description where the victim unequivocally stated that the person in the photograph was not defendant.

3. **Criminal Law § 66.12— confrontation in courtroom—no unnecessary suggestiveness—no taint of in-court identification**

   The evidence on voir dire supported the trial court's determination that a courtroom confrontation between the victim and defendant was not suggestive and that the victim's in-court identification of defendant was not tainted by the courtroom confrontation where it tended to show that, when the victim confronted defendant in a district courtroom, there were at least 14 white males in the courtroom similar in appearance to defendant, the victim made an immediate and positive identification, and the victim had ample opportunity to view the defendant at the time of the crime under well-lighted conditions.

4. **Criminal Law § 66.1— in-court identification—witness hypnotized prior to trial**

   A rape victim's in-court identification of defendant was not tainted because the victim was hypnotized several months before the trial in an attempt to aid the victim to recall additional details of the crimes and her assailant.

5. **Criminal Law § 97.1— additional testimony on redirect—no abuse of discretion**

   In a prosecution for armed robbery, rape and sexual offense, the trial court did not abuse its discretion in permitting the State to question the victim on redirect examination about items missing from her home after the district attorney had failed to establish during the direct examination of the

victim that any property had been taken from the home, person or presence of the victim as required for a conviction of armed robbery. If defendant was surprised by such additional evidence, he should have moved for a continuance or a recess. G.S. 15A-1226(b).

**6. Criminal Law § 73.2; Rape and Allied Offenses § 4— testimony not hearsay — use of word "rape" not prejudicial**

   An officer's testimony that "He (the husband) got a call saying she had been raped," was not inadmissible hearsay since it did not refer to what the husband said to the officer; nor was use of the word "raped" prejudicial since the victim had already given a detailed account of the crime during her testimony.

**7. Robbery § 4.3— armed robbery — use of weapon — sufficiency of evidence**

   The State's evidence was sufficient to show that a gun possessed by defendant was used to commit a robbery so as to support his conviction for armed robbery where it tended to show that defendant used the gun to compel the victim's cooperation and enable him to bind, blindfold and gag her, and that while the victim was bound and gagged the defendant took several items of jewelry, including three rings, from her hands.

**8. Rape and Allied Offenses § 4.3— rape victim shield statute — constitutionality**

   The rape victim shield statute, G.S. 8-58.6, which prohibits a defendant from cross-examining a rape victim about prior acts of sexual misconduct, does not violate a defendant's rights to equal protection and due process.

**9. Criminal Law § 83.1— competency of wife to testify against husband**

   The trial court properly permitted defendant's wife to testify for the State in a criminal prosecution where the wife's testimony did not concern confidential communications. G.S. 8-57.

ON appeal as a matter of right from judgments of *Bruce, J.,* entered at the 11 January 1982 Criminal Session of Superior Court, ONSLOW County. Defendant was indicted, and after entering pleas of not guilty to each count, was tried and found guilty of (1) armed robbery, (2) kidnapping, (3) first degree rape and (4) first degree sexual offense. The trial judge arrested judgment on the kidnapping conviction and imposed upon defendant a sentence of twenty years to life for the armed robbery conviction, a consecutive life sentence for the first degree rape conviction and a consecutive life sentence for the first degree sexual offense conviction.

The State's evidence tended to show that on 31 March 1981, the victim, Mary Patricia Reep, received a telephone call in response to a classified advertisement placed by her in the Jacksonville Daily News in an attempt to sell a waterbed. Upon

State v. Waters

request Ms. Reep gave the caller, a male, directions to her home where the waterbed was located. The defendant arrived at the Reep residence approximately one hour after the telephone inquiry and identified himself as the person interested in buying the waterbed. Ms. Reep then allowed the defendant to enter her home for the purpose of viewing the waterbed. The headboard was located downstairs, in the living room and the remaining parts of the bed were located in an upstairs bedroom. After going to the bedroom where the waterbed was located the defendant pointed a gun at the victim's head and ordered her to turn around and cooperate or he would kill her and her eight months old child who was asleep in the room.

Defendant proceeded to tape the victim's hands together and her eyes closed. After demanding to be told where any valuables were located in the house, the defendant gagged the victim with tape and tied her feet together with a scarf. After rummaging throughout the house, defendant returned to the bedroom where the victim had been bound and gagged and forced her to have sexual intercourse with him against her will. Prior to the sexual intercourse defendant attempted an act of sodomy against the victim and had placed his finger into her rectum. After completing these sexual acts defendant removed several rings from the victim's hands and left, threatening her not to call the police. The victim immediately freed herself and called her husband who in turn called the police. Ms. Reep gave a detailed description of her assailant to the police and indicated that various items of jewelry were missing from the home.

One week after the alleged crimes the victim underwent hypnosis in an attempt to recall additional details of the crimes and her assailant. During the following few months the police, on three separate occasions, showed Ms. Reep photographs of various white males matching the description of her assailant that she had given the police. On each occasion Ms. Reep unequivocally stated that her assailant was not present in any of the photographs. However, on 12 August 1981 while viewing a photographic line-up consisting of six photographs the victim made a tentative identification of the defendant as her assailant. Upon a request to view the defendant fully, the victim was summoned to a District Courtroom in Onslow County where the defendant and thirteen persons similar in appearance to de-

fendant were present. Upon entering the courtroom Ms. Reep identified the defendant as her assailant. At the time of the identification the defendant was before the court in a case concerning obscene telephone calls.

The defendant presented evidence of an alibi defense that he was home in bed at the time of the alleged incidents.

At the close of all the evidence the jury found the defendant guilty of first degree rape, first degree sexual offense, armed robbery and kidnapping. The sentences were ordered as previously indicated with Judge Bruce arresting judgment on the kidnapping conviction.

Other facts pertinent to the defendant's assignments of error will be incorporated into the opinion.

*Rufus L. Edmisten, Attorney General, by Assistant Attorney General Alfred N. Salley, for the State.*

*Samuel S. Popkin, for the defendant.*

COPELAND, Justice.

Defendant brings before this Court eight assignments of error for review in which he contends he is entitled to a new trial. For the reasons stated below, we disagree with each of defendant's assignments of error and find that he received a fair trial, free from prejudicial error.

[1] Under assignment of error number one, the defendant asks the Court to determine whether defendant's exhibits 19-30 were discoverable by him at trial. Defendant is unaware of the contents of these exhibits which were part of a police officer's file. Under G.S. 15A-903 the State must disclose to defendant, upon proper request, information concerning statements made by the defendant, his prior criminal record or tangible objects material to the preparation of a defense. However, G.S. 15A-904 protects from disclosure reports, memoranda or other internal documents made by persons acting on behalf of the State's investigation and those statements made by witnesses or prospective witnesses of the State to anyone acting on behalf of the State. In *State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977), we stated that G.S. 15A-903 and G.S. 15A-904 must be construed jointly. In *Hardy*, we estab-

lished procedures for trial courts to follow when, as in this case, the defendant makes at trial a request for discovery of information within the State's possession which may, as a result of 15A-903 and the State's case in chief, be relevant, competent and not privileged. The procedure in *Hardy* calls for an *in camera* inspection of the information and appropriate findings of fact to be made with any excluded evidence sealed and placed in the record for appellate review. *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977).

In the case *sub judice* the trial court conducted an *in camera* inspection of thirty exhibits. As a result of this inspection defendant's exhibits 19-30 were found to be non-discoverable. Although Judge Bruce failed to make specific findings of fact concerning each excluded exhibit, he did seal in an envelope the excluded material and preserved it in the record.

We have reviewed each of the excluded exhibits consisting primarily of police records and statements of prospective witnesses. The information in these excluded exhibits would have added nothing to the evidence produced at trial and would have been of no assistance to the defendant at trial. As a result we find no prejudicial error resulted from the failure of the trial court to allow discovery of the defendant's exhibits 19-30 and this assignment of error is overruled.

In his second assignment of error the defendant contends that the trial court erred by permitting the victim, Ms. Reep, to make an in-court identification of the defendant as her assailant. The defendant attacks the in-court identification on three grounds.

[2] (A) Defendant first contends that any in-court identification was irreparably tainted when the police conducted a photographic "show-up" by showing the victim a single photograph of a white male matching the description of her assailant. Although such a procedure may, under some circumstances, be suggestive there is no evidence that this photograph was of the defendant. In fact, the victim unequivocally stated that the person in the photograph was not her assailant. We fail to see how this specific photographic "show-up" could in any way lead to a possible misidentification of the defendant in court.

**[3]** (B) Secondly, defendant attacks the court's refusal to suppress the victim's in-court identification on the grounds that the trial court's determination that a courtroom confrontation between the victim and the defendant was not suggestive is not supported by the evidence presented at the *voir dire* hearing. In determining whether such a confrontation is unconstitutionally suggestive, the trial court must consider the totality of the circumstances. *State v. Thomas*, 292 N.C. 527, 234 S.E. 2d 615 (1977). Judge Bruce, prior to making his ruling, conducted a thorough *voir dire* hearing and found that on 18 August 1981, when the victim confronted the defendant in District Court of Onslow County, there were at least fourteen white males in the courtroom similar in appearance to the defendant. Judge Bruce also found that the victim made an immediate and positive identification. In addition, the victim had ample opportunity to view the defendant at the time of the crime under well-lighted conditions. The trial court's findings of fact, considering the totality of circumstances, *State v. Thomas*, 292 N.C. 527, 234 S.E. 2d 615 (1977), support the conclusion that the in-court identification of the defendant was not irreparably tainted by the courtroom confrontation. We note that at no time prior to trial or at trial did the victim make an incorrect identification of her assailant.

**[4]** (C) Thirdly, defendant contends the in-court identification was irreparably tainted when the victim was hypnotized prior to trial. Defendant argues that such a procedure is inherently suggestive. A review of the record discloses nothing which might remotely suggest that the victim's identification of the defendant was affected by the hypnosis. The hypnosis occurred months before the defendant was identified and there is no evidence that any suggestive remarks were made to the victim during her hypnosis. As stated by Justice Lake in *State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414 (1978), "[t]he circumstance that this witness was hypnotized prior to trial would bear upon the credibility of her testimony . . ., but would not render her testimony incompetent." 295 N.C. 119, 244 S.E. 2d 427. As a result this assignment of error is overruled.

**[5]** In his third assignment of error defendant argues that Judge Bruce committed prejudicial error when he allowed the State to question the victim, on re-direct examination, about items missing from her home after the defendant left when no mention of these

missing items had been made on direct examination. The record indicates that the district attorney had failed to establish during the direct examination of Ms. Reep that any property had been taken from the home, person or presence of the victim as required for a conviction of robbery with a dangerous weapon as defined in G.S. 14-87. However, G.S. 15A-1226(b) provides, "[t]he Judge in his discretion may permit any party to introduce additional evidence at any time prior to verdict."

Defendant concedes that the trial judge had within his discretion the authority to permit the State to introduce new evidence on re-direct examination. However, he contends he was surprised by the additional evidence and was thereby prejudiced. In *State v. Carson*, 296 N.C. 31, 249 S.E. 2d 417 (1978), we held that the defendant, in situations like the one present in this case, should move for a continuance or a recess if he is surprised by the additional evidence. The defendant did not make such a motion in this case. We feel that the trial court properly acted within its discretionary power and overrule this assignment of error.

[6] Defendant maintains in his fourth assignment of error that the trial court erred by allowing police officer Matthews to testify that, "He (the husband) got a call saying she had been raped." Defendant contends the statement was improper opinion testimony invading the province of the jury and was not offered for corroborative purposes. The contested statement made by Officer Matthews is not inadmissible hearsay because it does not refer to what the husband said to the officer. Instead, the statement was in part an explanation of why the husband was home with his wife. In addition, we fail to see how the word "raped" was prejudicial since the victim had already given a detailed account of the crime during her testimony. The defendant has failed to show how the verdict in this case was influenced by this statement. G.S. 15A-1443(a); *State v. Turner*, 268 N.C. 225, 150 S.E. 2d 406 (1966). As a result we overrule this assignment of error.

[7] Defendant argues in his fifth assignment of error that the trial judge erred by refusing to dismiss the charge of armed robbery at the close of the State's evidence. Defendant contends the deadly weapons he possessed at the time of the crimes were not used to commit the robbery. This contention is ludicrous. The

defendant used the weapons to compel the victim's cooperation and enable him to bind, blindfold and gag her. While Ms. Reep was bound and gagged the defendant took several items of jewelry including three rings from her hand. There is no doubt that the deadly weapons were used in the commission of the robbery. This assignment of error is overruled.

[8] Defendant advances in his sixth assignment of error the argument that G.S. 8-58.6, which prohibits a defendant from cross-examining a rape victim about prior acts of misconduct, violates his right to equal protection and due process under the law. Neither the Constitution of the United States nor the Constitution of North Carolina requires "that the same rules apply to incompatible classes." *State v. Stafford,* 274 N.C. 519, 535, 164 S.E. 2d 371, 383 (1968). In other words there is no violation of one's right to equal protection under the law when a discrepancy in treatment exists between classifications. The defendant in a criminal case, as a witness, has never been viewed as belonging to the class of witnesses to which a prosecuting witness in a rape case belongs. In any event the State Legislature has the power to make distinctions within classifications when there is a reasonable purpose for such distinctions. *Guthrie v. Taylor,* 279 N.C. 703, 185 S.E. 2d 193 (1971), *cert. denied,* 406 U.S. 920, 32 L.Ed. 2d 119, 92 S.Ct. 1774 (1972). Our legislature had a reasonable basis for placing rape victims into a class of witnesses different from other witnesses, to-wit, to avoid undue prejudice in the minds of the jury which is caused by questions concerning irrelevant sexual conduct.

Defendant also asserts that G.S. 8-58.6 violates his right to due process under the law. We recently upheld the constitutionality of G.S. 8-58.6 in *State v. Fortney,* 301 N.C. 31, 269 S.E. 2d 110 (1980). In addition the constitutionality of a statute may only be contested by a litigant who is adversely affected by the statute. *State v. Mems,* 281 N.C. 658, 190 S.E. 2d 164 (1972). The defendant in this case has failed to show how he was adversely affected by G.S. 8-58.6. As a result he has no standing to challenge G.S. 8-58.6 as a violation of his right to due process under the law. This assignment of error is overruled.

[9] Defendant next assigns as error the trial court's refusal to prevent his wife from testifying for the State over his objection.

Although G.S. 8-57 makes a spouse competent to testify as a witness for the defense, it does not make a spouse competent to testify in a criminal case for the State. In effect G.S. 8-57 left intact the common law rule that a spouse is incompetent to testify against the other spouse in a criminal case. However, in *State v. Freeman*, 302 N.C. 591, 276 S.E. 2d 450 (1981) we modified the common law rule and held that, "spouses shall be incompetent to testify against one another in a criminal proceeding *only if* the substance of the testimony concerns a 'confidential communication'. . . ." 302 N.C. 596, 276 S.E. 2d 453. (Emphasis added.) In reviewing the transcript we find that the defendant's wife's testimony concerned no "confidential communications" and is therefore competent.

In his brief defendant suggests that Ms. Waters was compelled to testify on behalf of the State against her husband. A review of the record discloses no subpoena commanding Ms. Waters' appearance or testimony. Likewise, a review of the transcript, including a *voir dire* hearing concerning the defendant's objection to Ms. Waters' testimony, fails to produce any evidence that Ms. Waters was being compelled to testify. As a result we review Ms. Waters' testimony only on the issue of competency and do not consider the merits of whether a wife may be compelled to testify against her husband. This assignment of error is overruled.

Defendant finally argues that the trial court erred in summarizing the contentions of the State in regard to certain circumstantial evidence presented at trial. Specifically defendant argues that the court misstated facts concerning the victim's identification of the vehicle driven by her assailant and facts concerning the defendant's access to and knowledge of the use of adhesive tape.

Upon review of Judge Bruce's charge to the jury and the transcript we believe the judge gave a fair and accurate summary of the circumstantial evidence presented by the State. We also note that the defendant made neither an objection to the judge's summary of the evidence nor a request for further instructions. If there was a slight misstatement of any kind concerning circumstantial evidence, it was harmless beyond a reasonable doubt.

We believe that the defendant received a fair and impartial trial free of prejudicial error.

No error.