STATE OF NORTH CAROLINA v. JEROME PARKER BRITT

No. 498A84

(Filed 7 October 1987)

1. **Criminal Law § 83— wife compelled to testify against husband—harmless error**

    Even if defendant's wife was improperly compelled to testify against defendant in violation of N.C.G.S. § 8-57(b), such error was not prejudicial to defendant where defendant's wife essentially corroborated testimony by other witnesses that defendant believed she was having an affair with the victim and that defendant had threatened the victim, and where, in view of the strength of the State's case, there is not a reasonable possibility that a different result would have been reached had defendant's wife not testified. N.C.G.S. § 15A-1443(a).

2. **Criminal Law § 135.4— first degree murder—life sentence—sentencing hearing not required**

    The trial judge did not err in sentencing defendant to life imprisonment for first degree murder without holding a separate sentencing procedure in accordance with N.C.G.S. § 15A-2000 where the prosecutor announced at the beginning of the trial that there was no evidence of any aggravating circumstance. The trial court's statement that the State did not "elect" to try defendant for his life did not improperly permit the district attorney to exercise discretion as to defendant's sentence but was merely a recognition that the State had conceded the absence of aggravating factors. Furthermore, the State could properly make such announcement at the beginning of trial, or at any other time, rather than at the sentencing hearing.

3. **Criminal Law § 131.2— recanted testimony—when new trial allowed**

    A defendant may be allowed a new trial on the basis of recanted testimony if (1) the court is reasonably well satisfied that the testimony given by a material witness is false, and (2) there is a reasonable possibility that, had the false testimony not been admitted, a different result would have been reached at the trial.

4. **Criminal Law § 131.2— recanted testimony—new trial denied**

    Defendant is not entitled to a new murder trial under the standard for newly discovered evidence because an eyewitness recanted his trial testimony and filed an affidavit corroborating defendant's trial testimony where the trial court found that the new testimony is not "probably true." Nor is defendant entitled to a new trial under the rules for recanted testimony where the court's findings can only support the conclusion that the court was not "reasonably well satisfied" that the trial testimony of the eyewitness was false.

APPEAL from sentence of life imprisonment entered by *Barefoot, J.,* on 9 May 1984 following defendant's conviction by a

jury of murder in the first degree. Heard in the Supreme Court 11 March 1987.

*Lacy H. Thornburg, Attorney General, by Thomas J. Ziko, Assistant Attorney General, for the State.*

*A. Jackson Warmack, Jr., for defendant-appellant.*

FRYE, Justice.

Defendant contends on this appeal that the trial court erred in allowing his wife to testify against him at his trial and in imposing a life sentence without permitting the jury to determine his sentence. We find no reversible error in defendant's trial and sentencing. We also find no error in the denial of defendant's motion for appropriate relief.

Defendant was indicted on 9 January 1984 for the murder of James Thomas Cotton. The case came on for trial before Barefoot, J., on 7 May 1984, and the jury found defendant guilty of first degree murder. The trial judge sentenced defendant to life imprisonment after the State prayed judgment on the grounds that it knew of no evidence of any of the aggravating factors set forth in N.C.G.S. § 15A-2000. Defendant appealed to this Court.

The State's evidence at trial tended to show that defendant believed that his estranged wife was having an *affaire* with the victim, James Cotton, and that defendant had threatened Cotton. On 19 December 1983, at about dusk, Cotton was in Lowe's Fish Market in Seaboard, North Carolina. One of the State's witnesses testified that he saw defendant drive up, get out of his car, and, shotgun in hand, apparently reconnoiter the interior of the fish market before going in. Three witnesses, who were in the fish market at the time, testified that defendant burst into the store, holding his shotgun. He yelled, "I told you, [expletive], I'm going to kill you," or words to that effect, and shot Cotton four or five times. Cotton, who died within a few minutes, was subsequently found to have been armed.

Defendant offered evidence that Cotton had previously harassed and threatened him. He testified that he went into the fish market on 19 December 1983 to resolve matters with Cotton. Although he took his shotgun with him from his truck, he left it outside the door of the fish market. As soon as defendant entered

the store, Cotton started to fumble in his pockets. Believing that Cotton was going for a gun, defendant reached back outside the door for his own gun and shot Cotton.

I.

[1] The State called defendant's wife as one of its rebuttal witnesses. Defendant objected pursuant to N.C.G.S. § 8-57. Subsection (b) of that statute provides, "The spouse of the defendant shall be competent but not compellable to testify for the State against the defendant in any criminal action or grand jury proceedings . . . ." N.C.G.S. § 8-57(b) (1986). *See also State v. Waters*, 308 N.C. 348, 302 S.E. 2d 188 (1983). The trial judge accordingly held a voir dire where defendant's attorney questioned Mrs. Britt to determine whether she was being compelled to testify, and the following transpired:

DIRECT EXAMINATION ON VOIR DIRE BY MR. WARMACK:

Q. You are the wife of Jerome Britt?

A. Right.

Q. When were you married?

A. November 10th, 1981.

THE COURT: Let me ask her now—I'm not interested in that. I'm interested in—

Q. Did you come up here voluntarily today or are you under subpoena?

A. I was called and told I had subpoena.

Q. You were called and told you had a subpoena?

A. Right.

Q. Who called you?

A. Sheldon Skinner.

Q. When did Mr. Skinner call you and told [sic] you were subpoenaed to be up here?

A. Monday.

State v. Britt

Q. Did you come up here Monday.

A. No. Then I talked with Mr. Beard and he told me not to come until he called me. So last night he called me.

Q. So you feel like you're up here under subpoena?

A. Well, he told me last night if I didn't come he would send a subpoena.

Q. Would you have come if you weren't told to come?

A. No.

Q. Do you want to testify in this case?

A. Well, I have nothing to testify. I wasn't there. I don't know what happened.

Q. Do you not want to testify in this case?

A. If I have to answer questions—

Q. Do you want to?

A. Got phone call—yes, I'll testify.

Q. You will testify. Do you want to?

MR. BEARD: I'm going to object. I don't know whether anybody wants to testify. It's not particularly pleasurable for anybody to have to come up here.

THE COURT: I understand that. Are you being compelled to testify in this case? Do you feel that way or do you feel you can testify freely?

THE WITNESS: Well, I feel I'm being, you know, asked to testify, because Mr. Beard called me.

Q. Do you feel under any pressure to be here?

A. Well, kind of.

THE COURT: I'll let her testify.

State v. Britt

Defendant argues that his wife was improperly compelled to testify against him.[1]

Assuming, *arguendo*, that defendant is correct, we believe that the error was nevertheless not prejudicial.[2] Defendant's wife essentially corroborated other witnesses' testimony that defendant believed she was having an *affaire* with Cotton and that defendant had threatened Cotton. She also testified that defendant threatened her. In view of the strength of the State's case, however, we do not believe that there is a reasonable possibility that a different result would have been reached had defendant's wife not testified. *See* N.C.G.S. § 15A-1443(a) (1983).

## II.

[2] Defendant also argues that the trial judge erred in sentencing him to life imprisonment without holding a separate sentencing procedure in accordance with N.C.G.S. § 15A-2000. He contends that the trial judge improperly allowed the district attorney to "elect" to try his case as a non-capital first-degree murder. Defendant is hardly entitled to assign error to the court's failure to allow him to be tried for his life. We shall discuss this assignment of error because it does raise significant questions.

The record shows that the trial judge met with defendant's attorney and the district attorney before a jury was selected. Although their conversation was not recorded by the court reporter, defendant's attorney has informed this Court that the district attorney indicated at that time that he would not seek the death penalty. The record clearly reflects that the case was in

1. We note that the privilege belongs to the wife, not to the defendant, and it does not appear that anyone advised her that she had a right to refuse to testify. Once challenged, the better practice is for the trial judge to advise the spouse that he or she cannot be compelled to testify in cases where this statute applies, and then to determine whether the spouse is in fact still willing to testify.

2. Defendant, citing *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976), contends that his wife's testimony was incompetent and that therefore the error was reversible *per se*. However, we have said that a spouse's testimony is only incompetent if the substance of the testimony concerns a confidential communication. *State v. Waters*, 308 N.C. 348, 302 S.E. 2d 188 (1983); *State v. Freeman*, 302 N.C. 591, 276 S.E. 2d 450 (1981). There is no suggestion that defendant's wife was allowed to testify to confidential communications. Therefore, her testimony was not incompetent.

fact tried as a non-capital case. After the jury returned its verdict and was polled, the following transpired:

> MR. BEARD: State prays judgment, Your Honor.

> THE COURT: All right.

> Let the record reflect, the State does not elect to try the defendant for his life or to have the second phase which would be a sentencing hearing to determine whether or not the defendant would receive life or death upon his conviction of first degree murder because there were no aggravating circumstances that the State could find. Am I not correct? EXCEPTION 47

> MR. BEARD: That's correct, Your Honor.

Defendant quite correctly notes that the question of trying a first degree murder case as capital or non-capital is not within the district attorney's discretion. *See* N.C.G.S. § 15A-2000 (1983); *State v. Jones*, 299 N.C. 298, 261 S.E. 2d 860 (1980); *State v. Johnson*, 298 N.C. 47, 257 S.E. 2d 597 (1979). He relies upon the trial judge's use of the word "elect" in arguing that the trial judge improperly permitted the district attorney to exercise discretion as to his sentence.

However, we have previously held that where there is no evidence of any aggravating circumstance, the trial judge need not conduct the sentencing proceeding set forth in N.C.G.S. § 15A-2000 but may proceed to pronounce sentence of life imprisonment. *See State v. Johnson*, 298 N.C. 47, 257 S.E. 2d 597. When the State has no evidence of any aggravating circumstance, the district attorney may so inform the court. In doing so, the district attorney is not exercising any discretion as to defendant's sentence, because a jury may not impose a death sentence in the absence of at least one aggravating factor. *See id.* Rather, by bringing the absence of such factors to the attention of the trial judge, the district attorney is pursuing the laudable goal of avoiding needless judicial proceedings and concomitant waste of judicial resources. When Judge Barefoot's words are considered in their entirety, it is clear that he was merely announcing that the State had conceded the absence of aggravating factors and would not seek to put the court, the jury, the State, and the defendant through needless proceedings.

In *State v. Johnson*, we said, "In a case in which the state has no evidence of an aggravating circumstance we see nothing in the statute which would prohibit the state from so announcing to the court and jury *at the sentencing hearing*." 298 N.C. at 79-80, 257 S.E. 2d at 620 (emphasis added). Relying on this sentence, defendant contends that the district attorney may only make this announcement at the close of the guilt phase of a trial. Defendant has stretched the wording in *Johnson* beyond its intended meaning. All *Johnson* said was that the State *could* make its announcement at the close of the guilt phase; it did not say that this was the only permissible moment. *Id.* Although we reiterate our conclusion that any such announcement must be based upon a genuine lack of evidence to support the submission of any aggravating factors, *see id.*, there is nothing to prevent the State from making the announcement at the beginning of the trial, *see State v. Meisenheimer*, 304 N.C. 108, 111 n.1, 282 S.E. 2d 791, 794 n.1 (1981), or at any other time.

The record before this Court shows no evidence of any of the aggravating factors listed in N.C.G.S. § 15A-2000(e). Accordingly, the trial court committed no error with respect to N.C.G.S. § 15A-2000 in its conduct of defendant's trial and sentencing. *See State v. Meisenheimer*, 304 N.C. 108, 111 n.1, 282 S.E. 2d 791, 794 n.1.

III.

After defendant's conviction and entry of notice of appeal to this Court, one of the four witnesses who was in the fish market at the time of the shooting, Joe Louis Moody, recanted his testimony and filed an affidavit which in substance corroborates defendant's trial testimony. Defendant, pursuant to the provisions of N.C.G.S. § 15A-1411 to -1422, filed a motion for appropriate relief in this Court. By order entered 20 March 1985, we remanded the case to the Superior Court, Northampton County, for an evidentiary hearing on defendant's motion. The hearing was held at the 15 April 1985 Criminal Session of Superior Court, Northampton County, with Stephens, J., presiding. After hearing testimony from the witness Moody and from the deputy sheriff who investigated the murder, Judge Stephens made findings of fact and conclusions of law and denied the motion. We find no error.

Defendant seeks a new trial pursuant to N.C.G.S. § 15A-1415 (b)(6) (1983) which permits a motion for appropriate relief to be made more than ten days after entry of judgment on the grounds that:

> Evidence is available which was unknown or unavailable to the defendant at the time of the trial, which could not with due diligence have been discovered or made available at that time, and which has a direct and material bearing upon the guilt or innocence of the defendant.

In *State v. Ellers*, 234 N.C. 42, 65 S.E. 2d 503 (1951), a case in which the key witness repudiated his testimony after the jury verdict but before judgment was entered thereon, the Court held that the defendant was entitled to a new trial because the recantation removed the basis for the verdict. In so holding, the Court said, "the decisions ordinarily applicable to newly discovered evidence will not be held as controlling upon a factual situation like that disclosed by the present record." *Id.* at 45, 65 S.E. 2d at 505. Nevertheless, several subsequent cases have used the newly discovered evidence standard for determining whether a defendant is entitled to a new trial based on repudiated or recanted testimony. *See State v. Morrow*, 264 N.C. 77, 140 S.E. 2d 767 (1965); *State v. Roddy*, 253 N.C. 574, 117 S.E. 2d 401 (1960); and *State v. Blalock*, 13 N.C. App. 711, 187 S.E. 2d 458 (1972). In a recent case, however, we found it unnecessary to decide whether the affidavits submitted in support of a motion for appropriate relief should be treated as recanted testimony or newly discovered evidence, concluding "that the affidavits do not show either." *State v. Nickerson*, 320 N.C. 603, 609, 359 S.E. 2d 760, 763 (1987). More importantly, we recognized that *State v. Ellers*, 234 N.C. 42, 65 S.E. 2d 503 "stands for the proposition that the rule for granting a new trial for newly discovered evidence is not the same as the rule for granting a new trial for recanted testimony." *State v. Nickerson*, 320 N.C. at 609, 359 S.E. 2d at 763.

Our usual standard for evaluating motions for a new trial on the grounds of newly discovered evidence requires a defendant to establish seven prerequisites:

> 1. That the witness or witnesses will give newly discovered evidence.

2. That such newly discovered evidence is probably true.

3. That it is competent, material and relevant.

4. That due diligence was used and proper means were employed to procure the testimony at the trial.

5. That the newly discovered evidence is not merely cumulative.

6. That it does not tend only to contradict a former witness or to impeach or discredit him.

7. That it is of such a nature as to show that on another trial a different result will probably be reached and that the right will prevail.

*State v. Cronin*, 299 N.C. 229, 243, 262 S.E. 2d 277, 286 (1980). *See also State v. Beaver*, 291 N.C. 137, 229 S.E. 2d 179 (1976). This standard is a modification of the *"Berry"* rule, initially set forth in *Berry v. State*, 10 Ga. 511 (1851) (setting forth essentially the same prerequisites but lacking the requirement that the newly discovered evidence be "probably true"). The *Berry* rule is commonly used in evaluating newly discovered evidence. *See generally* Note, *Gary Dotson as Victim: The Legal Response to Recanting Testimony*, 35 Emory L. J. 969, 973-75 (1986) (hereinafter cited as *Dotson*).

[3]  However, several jurisdictions have been troubled by the idea that recanted testimony is a special type of newly discovered evidence. *See, e.g., State v. Lawrence*, 112 Idaho 149, 730 P. 2d 1069 (Ct. App. 1986); *State v. Taylor*, 287 N.W. 2d 576 (Iowa 1980); *Thacker v. Commonwealth*, 453 S.W. 2d 566 (Ky. 1970); *State v. Caldwell*, 322 N.W. 2d 574 (Minn. 1982); *State v. Sena*, 103 N.M. 312, 706 P. 2d 854 (1985); *see generally* 3 C. Wright, *Federal Practice and Procedure*, § 557.1 (2d ed. 1982) (hereinafter cited as *Wright*). It "affects the integrity of the judicial process in a way that overlooked evidence does not." *State v. Lawrence*, 112 Idaho at 151, 730 P. 2d at 1071 (citing 3 C. Wright, *Federal Practice and Procedure* § 557.1 (2d ed. 1982) ). In recantation cases, what is sought is a new trial *without* untruthful testimony rather than one that merely adds different material. *State v. Caldwell*, 322 N.W. 2d 574, 585 (Minn.). Accordingly, although most states and at least two federal circuits continue to use the same standard for

evaluating motions for a new trial on the basis of recanted testimony, several jurisdictions use a special standard. *See generally Dotson*, 973-975. A few use tests peculiar to their own jurisdiction, *e.g., People v. Bracey*, 51 Ill. 2d 514, 283 N.E. 2d 685 (1972) (due process test—defendant has burden of showing that perjured testimony was used, then state must show that the testimony was harmless beyond a reasonable doubt); *State v. Robillard*, 146 Vt. 623, 508 A. 2d 709 (1986) (combination of first and third parts of *Larrison* rule with "probability" standard). However, most of the federal circuits and at least four states have adopted the "*Larrison*" rule, first enunciated in *Larrison v. United States*, 24 F. 2d 82 (7th Cir. 1928). *Blankenship v. State*, 447 A. 2d 428 (Del. 1982); *State v. Lawrence*, 112 Idaho 149, 730 P. 2d 1069 (Ct. App.); *State v. Caldwell*, 322 N.W. 2d 574 (Minn.); *Pickering v. State*, 260 N.W. 2d 234 (S.D. 1977); *Wright* § 557.1 (1982). Under the *Larrison* rule, a defendant may be allowed a new trial on the basis of recanted testimony if:

1) the court is reasonably well satisfied that the testimony given by a material witness is false;

2) that without it the jury *might* have reached a different conclusion; and

3) the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Larrison*, 24 F. 2d 82, 87-88 (7th Cir.) (emphasis in the original). We note that the *Larrison* rule has been adopted by the Fourth Circuit. *See United States v. Wallace*, 528 F. 2d 863 (4th Cir. 1976). Although the *Larrison* rule has not been universally approved, *see, e.g., United States v. Krasny*, 607 F. 2d 840 (9th Cir. 1979), *cert. denied*, 445 U.S. 942, 63 L.Ed. 2d 775 (1980); *United States v. Stofsky*, 527 F. 2d 237 (2d Cir. 1975), *cert. denied*, 429 U.S. 819, 50 L.Ed. 2d 80 (1976); *Stevenson v. State*, 299 Md. 297, 473 A. 2d 450 (1984); *State v. Robillard*, 146 Vt. 623, 508 A. 2d 709, we nevertheless believe it to be a better standard for evaluating motions for a new trial based on recanted testimony than the usual standard employed in considering motions made on the basis of newly discovered evidence. We therefore adopt a North Carolina version of the *Larrison* rule, modified and restated as

follows: A defendant may be allowed a new trial on the basis of recanted testimony if:

1) the court is reasonably well satisfied that the testimony given by a material witness is false, and

2) there is a reasonable possibility that, had the false testimony not been admitted, a different result would have been reached at the trial.

We are not convinced that part three of the *Larrison* rule, requiring that the party be taken by surprise or not know of the falsity until after the trial, is a prerequisite to the award of a new trial if the conviction was based upon perjured testimony. We therefore do not adopt part three of the *Larrison* rule.

[4]   The defendant, the State and the court below considered defendant's motion for a new trial under the usual rules relating to newly discovered evidence. Nevertheless, Judge Stephens' findings and conclusions are sufficient to allow review under both the more usual standard actually employed and under the new rule we adopt today. Specifically, the judge concluded that the witness Moody's recantation was not probably true. In support of this conclusion he found, *inter alia*:

(9) That the trial testimony of each eye witness was consistent in all major respects in that all three testified that the defendant came into the market with a gun and fired five times after saying to James Cotton "[Expletive], I told you I was going to kill you, didn't I?" That the defendant entered only one time before firing and that James Cotton was struck by the bullets immediately. That James Cotton had no gun in his hand and offered no violence to the defendant before the shooting.

. . . .

(13) That within thirty to forty-five minutes after the shooting, Chief Deputy Otis Wheeler arrived at the fish market and observed the body of James Cotton. The first witness he questioned was Joe Louis Moody who made a statement to Wheeler consistent with his testimony later at trial. Prior to the trial he was interviewed by Wheeler and Assistant District Attorney Rollins and gave them the same

factual account he had previously given Wheeler the night of the shooting and which he later gave at trial. Prior to trial and during the trial Joe Louis Moody never indicated that he had been threatened by anyone or that his statements were false.

(14) That Joe Louis Moody is a long-time acquaintance of the defendant; that Moody spoke with defendant several times by telephone while defendant was in the Northampton County jail and he corresponded by letter with the defendant after the trial was over; Moody has since that time destroyed the letters which he received from the defendant.

(15) That Joe Louis Moody several months after the trial notified Attorney Warmack to advise him that he had testified falsely at trial as the result of threats from the mother of the deceased and being afraid for his own safety.

(16) That Joe Louis Moody has now testified before this Court that Jerome Britt came into the fish market unarmed and that Britt thereafter went outside and got his gun when James Cotton began reaching inside his clothing for a weapon. Moody testified that he told Detective Wheeler the night of the shooting that it was self defense, but Wheeler ignored him and wrote up something different which Moody signed without reading; and that Moody says he testified falsely at trial out of fear from threats.

(17) That this Court has carefully scrutinized the prior trial testimony of Joe Louis Moody and the present testimony of Moody; the Court has carefully watched and evaluated the demeanor of this witness and considered his answers to all questions, paying careful attention to his explanation of his alleged failure to testify truthfully at trial; the Court finds Joe Louis Moody's present testimony unworthy of belief. His statement to Detective Wheeler shortly after the shooting was consistent with his trial testimony and was consistent with the account of the other three witnesses who were all questioned separately. He later verified the accuracy of this statement to Detective Wheeler and Assistant District Attorney Rollins prior to trial. He failed to report any threats or fear and appeared during such interviews not to be nervous, anxious or evasive. He testified under oath at

trial consistent with his previous accounts and in a positive manner, without ambiguity. The Court is satisifed beyond a reasonable doubt that Moody's present testimony regarding alleged threats is false. He could not even recall, under cross-examination exactly when they first occurred, stating at first 'a week before trial,' then 'two weeks before the trial' and finally 'about a month before trial.' Moody's statement that he told Detective Wheeler it was self-defense but that Wheeler ignored him and wrote up another statement which he signed without reading is contrary to the testimony of Detective Wheeler before this court. Moody's statement is unworthy of belief.

(18) The Court finds that Joe Louis Moody has testified falsely before this court at this evidentiary hearing; the defendant has failed to satisfy this court that Joe Louis Moody testified falsely at the defendant's trial. To the contrary, the Court is satisfied by the clear, convincing and believable evidence that Moody's original trial testimony was in fact true.

The quoted findings, to which no exception is taken, fully support Judge Stephens' conclusion that Moody's testimony is not "probably true." Therefore, defendant was not entitled to a new trial on the basis of Moody's recantation under the usual standard for newly discovered evidence. Similarly, under the rule we adopt today, the judge must be "reasonably well satisfied that the testimony given by a material witness is false." Judge Stephens specifically found that "the defendant has failed to satisfy this court that Joe Louis Moody testified falsely at the defendant's trial." The judge's findings can only support the conclusion that he was *not* "reasonably well satisfied" that Moody's trial testimony was false. Defendant has accordingly failed to meet the first requirement of the *Larrison* rule and is also not entitled to a new trial when that standard is employed. Accordingly, defendant's motion for appropriate relief was properly denied.

For all of the reasons previously discussed, we hold that defendant received a fair trial, free from prejudicial error, and that there was no error in the denial of defendant's motion for appropriate relief.

No error.